Howard Hollis, Plaintiff-Appellee, v. Terminal Railroad Association of St. Louis, a Corporation, Defendant-Appellant.

Gen. No. 65–83.

Fifth District.

June 15, 1966.

Roberts, Gundlach, Lee & Stubbs, of East St. Louis (Norman J. Gundlach, David H. Bremer, and George P. Mueller, of counsel), for appellant.

Chapman, Strawn & Pratt, of Granite City (Morris B. Chapman, of counsel), for appellee.

EBERSPACHER, J.

Howard Hollis, employed as a switchman by the Terminal Railroad Association of St. Louis, brought suit against his employer in the Circuit Court of Madison County for damages under the Federal Employers' Liability Act. Trial before a jury resulted in a verdict of $175,000 for the plaintiff. A remittitur was entered and judgment was entered for $125,000 upon defendant's post-trial motion from which this appeal is taken.

On June 23, 1961, plaintiff was working the second shift in the Madison Yards of the defendant. Plaintiff's job, basically, consisted of making up or breaking up trains within the yard. His job required him with great frequency to throw switches and particularly the Mason-Dixon Switch, which divided the yard and was used more than any other. On the day of the alleged injury, plaintiff was doing switching around 2:00 or 2:15 in the afternoon, he stooped over, grabbed the switch arm with his right hand, and threw it from right to left. In the words of the plaintiff "when the handle or arm was not hardly halfway, it just felt like it stopped and that's when I had pain in the lower part of my back and it also went all the way down into the left leg." The plaintiff did no more work that day because he was hurting and it was near the end of the shift. Saturdays and Sundays were his days off. The plaintiff worked on

16

Monday and after work went to see a doctor. Plaintiff was hospitalized for approximately six days. He was released to go back to work on July 3, 1961, and did go back to work. Plaintiff was in the hospital again in May, 1963, as a result of hurting his back while pulling a cord on his lawn mower. Plaintiff worked for the defendant until September 7, 1963, at which time he was 29 years of age. On that date he again hurt his back while throwing a switch and as a result he was under medical care over a period of time which ultimately culminated in a laminectomy; and resulted in plaintiff, who had a ninth grade education, becoming permanently industrially unemployable.

Defendant's basic theories for reversal of the judgment are that a submissible case for jury consideration was not made and that the verdict of the jury resulted in a miscarriage of justice which was predicated upon and compounded by a number of errors occurring during the trial of this case.

Defendant alleges as error that the trial court failed to sustain motions to strike allegations of the complaint, summarized as: failure to provide a good and efficient mechanically operated switch for plaintiff to use, failure to warn plaintiff of the dangerous and defective condition of the switch, failure to inspect and maintain the switch, and failure to provide sufficient help and assistance for the maintenance of the switch; or to direct verdicts on such allegations, and submitted to the jury improper charges of negligence both as to law and fact.

 Under the Federal Employers' Liability Act, a carrier is liable in damages for injury resulting in whole or in part from the negligence of any of its officers, agents or employees. Assumption of risk is no defense nor does contributory negligence bar a recovery. In determining whether a verdict in plaintiff's favor is supported on the record, the sole question is whether there is any evidence, considered in the light most favor-

able to the plaintiff, that defendant was guilty of negligence which contributed in whole or in part to the injury. Finley v. New York Cent. R. Co., 19 Ill2d 428, 167 NE2d 212. In Rogers v. Missouri Pac. R. Co., 352 US 500, 77 S Ct 443, 1 L Ed2d 493, it was held that under the Act, the test of a jury case is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the employee's injury.

■ ■ The evidence in this case shows that the switch in question worked "real stiff." There was evidence that complaints had been made as to this switch and other switches in the Madison Yard. The record shows that the number of men employed to maintain these switches had been reduced since the year 1958, to the point where the switches were not inspected and maintained with the frequency that was required to keep them working freely. Defendant objected to this evidence, but we believe it to be germane to the condition existing on June 23, 1961. Complaints as to the condition of these switches had regularly been made to the company. Defendant cites the case of Atlantic Coast Line R. Co. v. Collins, 235 F2d 805, as sustaining its basis for striking various allegations of negligence contained in the complaint. The evidence in that case showed that the switch had been oiled on Friday and the accident occurred the following Monday. There was also evidence that it had been regularly inspected and oiled and that no defects in the switch had been reported. The court said the evidence was insufficient to go to the jury on question of railroad's negligence. This is not true in the instant case as both witnesses Barton and Gentry testified that they had made complaints to their superiors. Here defendant contends that the trial court erred in allowing evidence as to the change in maintenance personnel, prior and since 1958. This evidence was

18

not for the purpose of proving the condition of the switches in 1958 but for the purpose of establishing the fact that the railroad did not have sufficient help in 1961 to maintain the switches in efficient working order. We feel the jury had a right to consider this evidence in their deliberations as to whether or not the railroad was guilty of any negligence. We therefore hold that there was sufficient evidence to warrant the case going to the jury. It therefore follows that plaintiff's Instruction No. 24, the issue instruction, was properly given.

Soon after plaintiff had returned to work, following his injury in June 1961, plaintiff executed a release of all claims for personal injuries, specifically including his injury of June 23, 1961, the consideration of which was $130, arrived at after plaintiff's negotiation with defendant's claim agent. The evidence shows that plaintiff had suffered a loss of wages of $132.96 on that occasion, and that the claim agent had confirmed by a telephone call to the hospital that plaintiff's injury had, on that occasion, been diagnosed as a low back strain. Plaintiff and defendant's claim agent, according to the testimony both gave in this case, did not agree as to whether the settlement was based on the injury or loss of wages. Defendant plead the release as an affirmative defense, to which plaintiff replied that the release was executed under a misapprehension of fact and erroneous conception as to the nature and extent of plaintiff's 1961 injury; that it was supported by inadequate consideration and resulted from the overreaching of plaintiff; and that it was void because procured by fraud and deception. Defendant objected to plaintiff's instructions with reference to the release, contending the first was bad because not supported by evidence and because it did not incorporate the elements of "preponderance of relevant evidence" or "intent to deceive." We agree that the applicable law to void a release in a case under this

19

Act is stated in Callin v. Pennsylvania R. Co., 332 US 625, where at page 630 the United States Supreme Court said:

"Until the Congress changes the statutory plan, the releases of railroad employees stand on the same basis as the releases of others. One who attacks a settlement must bear the burden of showing that the contract he had made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both the parties acted."

and that the degree of proof necessary to void the release was a preponderance of relevant evidence. See Purvis v. Pennsylvania R. Co., 198 F2d 631. Plaintiff's second instruction properly instructed with reference to the degree of proof necessary to void the release and the burden of proof instruction advised the jury that plaintiff had the burden of proving that the release was procured by misrepresentation or by a mutual mistake of fact concerning the extent and nature of plaintiff's injury. Defendant correctly contends that there is no evidence of fraud or deception, however, the evidence clearly supports plaintiff's theory that at the time of the execution of the release both parties were mistaken as to the extent and severity of plaintiff's injuries. Both plaintiff and defendant's claim agent testified that at that time, they were under the impression that plaintiff had only suffered a low back sprain and it would clear up without significant injury. A preponderance of the relevant evidence, supported plaintiff's contention that the parties misapprehended the extent of plaintiff's injury, and, in our opinion the trial court could properly have found as a matter of law that the release should be set aside. Clancy v. Pacenti, 15 Ill App2d 171, 145 NE2d 802; Ruggles v. Selby, 25 Ill App2d 1, 165 NE2d 733; Child v. Lincoln Enterprises, Inc., 51 Ill App 2d 76, 200 NE2d 751. In view of the foregoing conclu-

sion, we hold the giving of the instruction to be harmless error.

Defendant further contends that under the authority of section 65 of the Civil Practice Act (c 110, § 65, Ill Rev Stats 1963) and the decision in Moyers v. Chicago & E. I. R. Co., 43 Ill App2d 316, 193 NE2d 604, it was reversible error for the trial court to refuse two special interrogatories, which were objected to by plaintiff. The first: Was the defendant, acting through its agent, Mr. Biddle, guilty of fraud and deception in obtaining the plaintiff's executed release from plaintiff? The second: Were the plaintiff and defendant under a misapprehension of fact and an erroneous conception as to the nature and extent of the disability suffered by the plaintiff at the time the release in question was executed by the plaintiff?

Section 65 of the Civil Practice Act makes mandatory the giving of a special interrogatory, if it is on a material ultimate fact. The Moyers case (supra) points out that such interrogatory cannot be refused if the answer to the interrogatory will control the verdict, and will nullify the verdict if inconsistent therewith, and specifically held that the fact that the subject matter is covered by an instruction does not justify its refusal by the trial court. Here, the answer to either one of the interrogatories would not determine the jury's finding as to the ultimate fact of whether the release was executed under such circumstances as would bar recovery. If one were answered in the negative, it would not control the verdict, because the ultimate fact could only be determined by a like finding on both interrogatories. Since neither interrogatory standing on its own, could control the verdict, the trial court properly refused the special interrogatories.

The testimony of Dr. Schaerer established the permanency of the injury suffered by plaintiff. His testimony also established the fact that the injury com-

21

plained of could have been caused by the incident occurring on the 23rd day of June, 1961. He first saw the plaintiff on December 16, 1963, and upon hearing his history, he immediately thought, "This man has a ruptured disk." Medical examinations proved him right and he operated on the plaintiff on April 28, 1964. Dr. Schaerer stated that in his opinion, the incident in June 1961, set up the state for the subsequent occurrences, including the final massive herniation. While doctors who had treated and examined plaintiff before Dr. Schaerer had made no record of injury to a disc, the evidence shows that such injury was suspected.

■■ Defendant also assigns as error the fact that an instruction based on a mortality table was given (IPI 34.04). It is its contention that this instruction should be confined to factual situations where a party is deceased or where injury will permanently disable a person from gainful employment. The medical evidence sustains the fact that plaintiff will probably never be able to engage in the type of work which he has been doing most of his adult life. The defendant was allowed to give an instruction on the work life expectancy of a railroad employee (Defendant's Instruction No. 5), as well as one not limited by the type of employment (Defendant's Instruction No. 6). The giving of an instruction on life expectancy based on a mortality table is proper, where an injury is permanent, in order to aid the jury in their deliberations. This table was not introduced for the purpose of establishing a mathematical formula for pain and suffering.

■■ Defendant also assigns as error the trial court's failure to grant defendant's motion for a new trial because of alleged highly prejudiced and inflammatory arguments and statements made by plaintiff's counsel. Both counsel made some improper arguments and objection was sustained by trial court; they were

not persisted in. An attorney is allowed wide latitude in his closing argument. We do not feel that the argument and statements made by plaintiff's counsel were of such a nature that a mistrial should be granted.

 Defendant has requested that an additional remittitur be ordered. The trial court heard the evidence, observed the witnesses and did order a remittitur in the sum of $50,000. There was evidence based on a mortality table that plaintiff's life expectancy was 33.83 years, and that $126,510 would be required in order for plaintiff to draw monthly what he might have earned; under the work life expectancy of a railroad employee $113,331 would be required. The trial court is in the best position to determine whether an award is excessive or not, and there is no evidence of clear abuse of his discretion.

We therefore affirm the judgment of the Circuit Court of Madison County.

Judgment affirmed.

MORAN and GOLDENHERSH, JJ., concur.