GERALD LAUGHLIN, JR., Plaintiff-Appellee, *v.* LINDA L. CHENOWETH,
Defendant-Appellant.

Fourth District   No. 15598

Opinion filed December 30, 1980.

Howard W. Small, of Thomas, Mamer, Haughey & Miller, of Champaign, for appellant.

Edward J. Kionka, of Columbia, and Philip C. Zimmerly, of Zimmerly, Dodd, Stout & Cole, P. C., and John J. Lawless, both of Champaign, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case turns upon the requirements to authenticate, as a prior inconsistent statement and an admission of a party, a writing signed by that party and purporting to be his explanation of the occurrence giving rise to the litigation. We hold that under the record made here, the trial court did not err in sustaining an objection to an offer of proof of the document.

Suit was brought in the circuit court of Douglas County by Gerald Laughlin, Sr., on behalf of his minor son, plaintiff, Gerald Laughlin, Jr., against defendant, Linda L. Chenoweth, seeking damages for personal injuries suffered by plaintiff on July 1, 1976, as a result of a collision between a motorbike upon which he was riding and an automobile driven by defendant. The count upon which the case was tried sounded in negligence. After a trial by jury, judgment was entered on a verdict for plaintiff in the sum of $35,000.

Defendant appeals claiming error in: (1) the exclusion of the written document offered by defendant signed by plaintiff, and purporting to be his explanation of the collision; (2) the refusal of a continuance requested by defendant because of the presence of plaintiff's mother on the jury venire; (3) rulings concerning (a) defendant's request for extra time to submit a special interrogatory, and (b) the granting or denying of instructions.

The collision occurred near a "T" intersection formed by an east-west country road which continued through the intersection and a north-south country road which did not extend to the south beyond the intersection. Plaintiff who was then a few days short of being 10 years old rode his minibike south to the intersection, entered the intersection, turning left and was hit by defendant's automobile at a point on the south edge of the road some 30 to 50 feet east of the intersection. Defendant was traveling

in a westerly direction. Evidence was introduced that defendant's car skidded 59 feet to a point some witnesses thought to be the point of impact and then skidded an additional 18 feet, dragging plaintiff and his minibike along. Defendant testified that (1) she saw plaintiff enter the intersection when she was only 100 to 150 feet from the intersection; (2) she then applied her brakes; (3) plaintiff angled in a southeasterly direction to the south side of the road; and (4) that after she had come to a stop, plaintiff slid under her car. On the other hand, plaintiff testified that he stopped as he approached the intersection from the north, looked both ways, saw defendant's automobile as it crossed a bridge which he estimated to be about one-quarter of a mile away, entered the intersection, made a right angle left hand turn, saw defendant's car coming in the center of the road, pulled off to the side and was hit by defendant's swerving car.

In cross-examining plaintiff, defense counsel presented plaintiff with the document which is at the heart of this appeal. It was a two-page handwritten document purporting to be a statement of plaintiff describing the collision and bore the date of July 14, 1976. Plaintiff admitted that his signature appeared at the bottom of the first page, but denied having any recollection of having given the statement. Plaintiff's mother testified that an investigator came to their home at about that time. She stated that the investigator asked plaintiff how the collision happened and that plaintiff "told him" and the investigator "wrote it down." She testified that plaintiff tried to sign but had difficulty in writing so that after he signed the first page, she signed the second page with his name and hers. She was not asked as to whether she or plaintiff had read the statement.

Two sentences in the document are significant. In one plaintiff is purported to have said that he slowed as he approached the intersection as he came from the north but did not stop. In the other he was purported to have said that defendant's vehicle was 100 feet away from the intersection as he entered. Both statements if properly proved to have been made would have been impeaching prior inconsistent statements since at trial he testified that (1) he stopped before entering the intersection, and (2) she was about a quarter of a mile away at that time. The statements would also be clearly admissible against him as substantive evidence under the admission by a party opponent exception to the hearsay rule.

■■ We consider first the question of whether the document was sufficiently authenticated to be admissible for impeachment. The general rule in this respect was set forth in the often cited case of *Illinois Central R.R. Co. v. Wade* (1903), 206 Ill. 523, 530, 69 N.E. 565, 567, where the supreme court stated:

"When it is desired to impeach a witness by proof of oral state-

ments made by him out of court contradictory upon a material point of his testimony given from the witness stand, it is requisite that a foundation for the introduction of such oral statements be made by asking the witness if he did not, at a given time and place, in the presence of specified persons, make the supposed contradictory statements; but where the supposed contradictory statements were reduced to writing by the witness, or signed by him, a sufficient foundation for the introduction of the writing is laid by showing the paper to the witness, allowing him to inspect it and to read it if he desires, and proving by him, or others, *that the signature thereto is his genuine signature."* (Emphasis added.)

Subsequent to *Wade*, in *Belskis v. Dering Coal Co.* (1910), 246 Ill. 62, 92 N.E. 575, the supreme court indicated that the signature of a witness on an impeaching document is not always, of itself, sufficient to authenticate the document for use in impeaching that witness. There, a trial witness, who had difficulty speaking English, had testified at a coroner's inquest partly in English and partly in Lithuanian. A person present was purported to have reduced the testimony to a writing which was signed by the witness. That witness admitted at trial that the document contained his signature but said that he did not know what was written on the document when he signed it and that it appeared that the document had more wording on it at trial than it did when he signed it. The circuit court of Vermilion County excluded the document. The appellate court for the then Third Judicial District, predecessor to the court for the present Fourth Judicial District, affirmed (151 Ill. App. 85) noting that other than the testimony as to the signature, no other evidence had been presented to support the integrity of the document. The court described the witness as having "repudiated" the paper and having "denied that he had knowledge of its contents." The court then stated "in the absence of any counteracting evidence with relation to the paper and the circumstances under which it was signed the paper was properly excluded."

The supreme court reversed in *Belskis* for other reasons but approved the appellate court analysis of the authentication of the statement. It stated that in *Wade* "the witness not only admitted that he had signed the paper, but it was evident also that he admitted it was unchanged and that he *understood the contents at the time he wrote his signature*" (emphasis added) (246 Ill. 62, 68-69, 92 N.E. 575, 578). The supreme court then reiterated the language from the appellate opinion describing how, in the case before it, the witness had "repudiated the paper in the form in which it was presented to him and denied that he had knowledge of its contents." 246 Ill. 62, 69, 92 N.E. 575, 578.

In *Hapke v. Brandon* (1951), 343 Ill. App. 524, 99 N.E.2d 636, *Wade*

was cited with approval and the trial court was reversed for refusing to admit impeaching statements which the witness had admitted signing. The witness had denied saying the things attributed to him in the statements. No evidence was presented as to whether he had read the documents before signing them. In *Babington v. Bogdanovic* (1972), 7 Ill. App. 3d 593, 288 N.E.2d 40, although reversing on other grounds, the court approved a trial court's admission of an impeaching written statement which the witness admitted signing but claimed had been altered after her signature.

In *Plotkin v. Winkler* (1944), 323 Ill. App. 181, 55 N.E.2d 545, a trial court was held to have erred in excluding a written impeaching statement shown to be signed by the witness. The evidence showed the witness to be illiterate. He testified that the statement had been read to him before he signed it but that he had explained the facts to the person taking the statement as he testified to them at trial and not as they were contained in the statement. The opinion did not make clear whether the witness had testified as to whether the statement presented at trial was consistent with that read to him. *Wade* was cited with approval. In *Horton v. Mozin* (1950), 341 Ill. App. 66, 92 N.E.2d 671 (abstract), the same district of the appellate court which had written *Plotkin* discredited it, saying that it overlooked *Belskis*. The *Horton* court held the trial court to have committed reversible error in admitting for impeachment a written statement signed by a 12-year-old and purportedly taken from the child when no adults accompanied her. The evidence indicated that the child did not read the statement and that it was read to her. The child testified that she did not do so because she was told that the person taking the statement was from the office of her attorney. Although relying partly upon the evidence of fraud, the court relied principally upon the lack of proof of authenticity of the signed statement and said that the investigator who took the statement or someone else who knew of its contents at the time of the signing should have been produced.

Here, the showing of authenticity was weaker than in *Wade* because there was no showing that the plaintiff "understood the contents at the time he wrote his signature." Similarly it is weaker than in *Babington* because there the witness at least tacitly admitted that she had read the document over before signing. The trier of fact could then decide whether the document had been altered. The case differs from *Hopke* only in that the witness here was a bedridden 10-year-old who was unable to sign the second page of the document. As in *Hopke* no evidence was presented as to whether the witness had read the document before signing, but unlike in *Hopke*, the physical condition of the witness would indicate that he had not. The record is devoid of fraud upon the part of

the person taking the statement and it was taken while the minor's mother was present. Otherwise the facts are quite similar to those in *Horton*.

■■ The trial judge here was concerned with the accuracy of the statement and felt that the person writing the statement should have been present to authenticate it. We do not agree that to have been necessary. Had it been shown that the minor had read the statement prior to signing, that would have been sufficient to require its admission. Similarly, had his mother testified to having read the statement and stated that it accurately portrayed what her son had said, admission of the document would have been required. However, a trial judge has discretion in determining whether a sufficient showing of the accuracy of evidence has been made before allowing its admission. (*Paulison v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1979), 74 Ill. App. 3d 282, 392 N.E.2d 960.) *Belskis* clearly indicates that the admission of an impeaching statement is not always required merely because it bears the signature of the witness sought to be impeached. The fact that plaintiff's mother signed one page of the document adds nothing to defendant's position. The statement was not impeaching as to her. Under the total circumstances here, the trial court had discretion as to the admission of the document and did not breach that discretion by denying its admission.

No cases are presented by the parties bearing upon the sufficiency of the foundation for the admission of the document as an admission of a party opponent. We see no reason why the requirements for the admission of the document substantively should be any less than for its limited use as impeachment. The mother's signature on the document added nothing to its admissibility for this purpose as she was not a party. Accordingly, we hold that the court did not err in excluding it for that purpose as well.

■■ Plaintiff's mother was among the panel of jurors called for jury service at the time the case was tried. She had reported on previous days and had served on one case. Each prospective juror in the instant case was questioned on *voir dire* as to his or her acquaintance with the mother. The only juror who admitted to having spoken with her was immediately excused. No other indication of prejudicial relationship of any of the jurors to her was shown. Defendant recognizes that none of the cases cited by her are directly in point and that the issue was whether the entire panel was tainted. The mere fact that the mother was in the presence of other jurors does not mean that they would be prejudiced in her favor. Any theory that conversations not testified to took place would be mere suspicion. That is insufficient to impeach the jury's verdict. (*People v. Coleman* (1977), 50 Ill. App. 3d 40, 365 N.E.2d 246.) We conclude that no showing to that effect was made and that the trial court did not err in denying defendant's motion for a continuance made on the day of trial.

■■ ■ Defendant claims error arose because the trial court refused to continue further the conference on instructions to enable her to present an amended special interrogatory to be submitted to the jury. Defendant had not prepared any interrogatory prior to the conference on instructions. The court gave defendant a few minutes to prepare an interrogatory. When presented, the interrogatory was deemed to be bad because of the failure to include the element of proximate causation. (*Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453.) Defendant then requested further time to amend the interrogatory. The court (1) refused to grant defendant time to prepare the document, and (2) refused to allow defendant to make closing argument referring to the interrogatory which could be supplied at a later date in a form that could be agreed upon by the parties. While the court cannot arbitrarily refuse a special interrogatory which is appropriate and in proper form (*Larson v. Thomashow* (1974), 17 Ill. App. 3d 208, 307 N.E.2d 707), here none was actually tendered. The court was well within its discretion in requiring the interrogatory to have been in proper form and presented before allowing argument on the interrogatory. While it might appropriately have granted counsel additional time to present the interrogatory, we do not find it to have been guilty of reversible error in refusing to do so.

■■ Defendant claims error in the court's ruling on various instructions. Over defense objection, the court gave an issues instruction that stated that one of plaintiff's claims of negligence was the defendant's failure to yield the right-of-way to a vehicle on her right. Defendant maintains that because of the "dead end" nature of the intersection, section 11—901 of the Motor Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 11—901) was not applicable, citing *Blake v. Pegg* (1974), 17 Ill. App. 3d 975, 309 N.E.2d 43. That aspect of the Motor Vehicle Code was not an issue on appeal in *Blake*, and we do not consider the case to be authority on that point. In any event, defendant did not cite this as a reason in objecting to the instruction and we deem the point to be waived. (73 Ill. 2d R. 213(b); *Young v. Gateway Transportation Co.* (1975), 26 Ill. App. 3d 864, 326 N.E.2d 222.) Sheriff Wigall, testifying for defendant, in answer to a question on cross-examination had stated that the east-west road upon which plaintiff was traveling was a "through highway." In order to correct this impression given the jury, the court instructed the jury, over defense objection, as to the definition of a "through highway." (Ill. Rev. Stat. 1977, ch. 95½, par. 1—205.) Although plaintiff's cross-examination had invited the sheriff's mistaken statement of the law, we find no reversible error in the giving of the instruction. Defendant tendered and the court refused an instruction which stated, "The right-of-way rule * * * is modified at through highways." As the east-west road was not a "through highway" by statutory definition, the court properly refused the instruction.

The question of whether the written document signed by plaintiff should have been admitted was a close question but we do not find the court's refusal to admit the paper to be an abuse of discretion. We find no reversible error in other rulings made. Accordingly, we affirm.

Affirmed.

TRAPP, P. J., and CRAVEN, J., concur.