HOMER HENRY, Plaintiff-Appellant, v. BRET BRENNER, Defendant-Appellee.

Third District No. 3—85—0031

Opinion filed November 25, 1985.

William K. Brown, of Goldfine & Bowles, P.C., of Peoria, for appellant.

Rex K. Linder and Edward T. Habecker, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Homer Henry, brought this personal injury suit against defendant, Bret Brenner, for injuries allegedly sustained when the automobile which he was operating was struck from the rear by defendant's automobile. The jury returned a verdict in favor of defendant, upon which verdict judgment was entered by order of the circuit court of Peoria County. Plaintiff appeals on the theory that the evidence was insufficient to support the jury's verdict. Plaintiff also challenges the trial court's allowance of admission into evidence testimony of medical records used by an expert to illustrate and explain the expert's opinion.

The factual situation concerning the question of liability is relatively uncomplicated. The incident occurred on February 5, 1981, in Peoria, near the intersection of University and Northmoor streets; it was daylight, and the road surface was a combination of snow and slush. Plaintiff was traveling south in the right lane of traffic on University Street when he stopped in a line of traffic for a red light at Northmoor Street. Another auto driven by Kenneth Powell, stopped immediately behind plaintiff. Defendant, also proceeding south on University, was behind a school bus slowing to turn right into the Richwoods High School parking lot. The defendant then moved into the left southbound lane of traffic to pass the school bus. Ahead there was a line of cars stopped for the red light in both the left and right southbound lanes of traffic. Defendant then turned back into the right lane ahead of the school bus and braked to stop, but his tires locked causing his auto to slide on the pavement into the curb and then into the Powell auto, causing it to be pushed into the rear of plaintiff's auto. Plaintiff's auto was not pushed into the vehicle ahead of it, and the only damage to plaintiff's auto was a small dent in the rear bumper.

At the time of the incident, neither the plaintiff, the defendant, nor Mr. Powell made any complaints of physical injury. The following morning plaintiff went to the emergency room at St. Francis Hospital, where he complained of pain and stiffness in his neck. After being

X-rayed and examined, he was released. Next plaintiff went to Dr. Paul Mroz, a chiropractor, who had been treating plaintiff for a sore back during the past 14 weeks. Dr. Mroz continued to treat plaintiff for the next 15 months following the incident in question. Dr. Mroz testified that plaintiff's condition was aggravated as a result of the accident.

During the trial of this case, expert testimony on behalf of defendant contradicted plaintiff's claim of injury. Dr. Clinton Wentz, a radiologist, had examined the X rays taken at St. Francis Hospital both after the incident and X rays taken of plaintiff at St. Francis in 1976. He testified that his examination indicated no change in plaintiff and that both sets of X rays were considered within normal limits.

Dr. Hugh Cooper, an orthopedic surgeon employed by plaintiff's employer, who had treated plaintiff prior to and after the incident, in question, testified that plaintiff had preexisting problems in the areas of his body which he claimed were injured in the incident and opined that it was this history of problems, rather than the automobile accident, that was the aspect of the problem which resulted in plaintiff's prolonged lost time from work. On cross-examination Dr. Cooper noted that an automobile accident can aggravate a back condition, but that, in his opinion, the back condition of Mr. Henry was not aggravated by the incident.

A third expert's testimony, that of Dr. Walter Cibelli, was introduced by defendant, to testify about prior treatment of the plaintiff. Dr. Cibelli first treated plaintiff for pains in the neck and back in June 1976 and continued treatment for 3½ years thereafter. Dr. Cibelli noted in his testimony that plaintiff's complaints were a typical story as to this plaintiff.

■ When a party moves for a directed verdict, or for judgment *n.o.v.*, the trial court must consider all the evidence in the case. If there is any evidence, standing alone, together with all reasonable inferences therefrom which tends to prove the contentions of the opposing party, the motion must be denied. *Palmer v. Poynter* (1960), 24 Ill. App. 2d 68, 71, 163 N.E.2d 851.

■ On the evidence in the case at bar, the trial court properly denied plaintiff's motions for a directed verdict and a new trial. Although plaintiff contends that it is a clear matter of evidence that he suffered some injury, there is ample evidence from which the jury could have concluded the plaintiff sustained no injury nor any aggravation of any previous injury from the incident. Likewise, the jury might not have believed the time lost from work was a result of the injuries herein stated. The issues of liability and damages were sub-

stantially in dispute, and it was the function of the jury to resolve these disputes from its assessment of the credibility of the evidence.

■ Where the medical evidence was strong to the effect that pre-existing problems were no more serious after the accident than they were prior to the accident, and where impact of the vehicles was at a slow speed which caused minimal damage to the plaintiff's automobile, we cannot say that the collision was inexcusable or that defendant was negligent as a matter of law. In addition, the plaintiff relies upon the rule in *Calvetti v. Seipp* (1967), 37 Ill. 2d 596, 227 N.E.2d 758, which recognizes that when a motorist crosses into an oncoming lane of traffic, the burden of proof then shifts to the defendant to show he was not negligent. Here, because defendant's automobile changed from one southbound to another southbound lane, the rule in *Calvetti* is inapplicable.

Plaintiff also argues that the trial court erred in allowing Dr. Cooper's testimony as to the contents of medical records prepared by other doctors in his office. It is plaintiff's contention there is no provision in either Federal Rule 703 or 705 which allows an expert witness to testify as to hearsay/basis for his opinion on direct examination.

Dr. Cooper was of the opinion plaintiff's long absence from work was related to his history of neck and back complaints, rather than the automobile accident in question. Dr. Cooper was further of the opinion plaintiff's back problems were not aggravated by the automobile accident.

■ With regard to plaintiff's objection, it appears to be well-settled law that experts may consider not only medical and psychological records commonly relied upon by members of their profession in forming their opinions (*People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171), but that they may testify as to the contents of these records as well. *People v. Rhoads* (1979), 73 Ill. App. 3d 288, 391 N.E.2d 512; *People v. Germich* (1981), 103 Ill. App. 3d 626, 431 N.E.2d 1092; *Kinsey v. Kolber* (1982), 103 Ill. App. 3d 933, 431 N.E.2d 1316.

■ Dr. Cooper testified as to examinations conducted by himself and other Caterpillar Tractor Company staff physicians performed on the plaintiff. He explained when an employee comes to the Caterpillar medical facilities it is not always possible the same treating physician will treat the patient each time, but all medical records on an individual employee are contained in a single folder and the information from visits made with the other doctors is used in forming the treating physician's diagnosis and treatment. From the record, it is clear the medical records were of a type commonly used and relied upon by the medical staff of Caterpillar Tractor Company. Therefore, Dr.

Cooper could rely upon such a report in formulating his opinion on plaintiff's medical condition and could testify to the contents of the report.

The supreme court in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, adopted Federal Rules of Evidence 703 and 705.

Under Rule 705, an expert, once found qualified, can simply state his opinion. And, of course, a full presentation developing in detail the expert witness' qualifications, basis, opinions and reasoning is permissible upon direct examination. Facts, data, and opinions not themselves admitted into evidence may be included in such disclosure if the requirements of Federal Rule 703 are satisfied. Cross-examination may then be used to reveal the expert's basis for his opinion is inadequate, and the expert's opinion may then be stricken as based upon conjecture or speculation.

Rule 703 was a controversial rule when enacted, and it remains controversial in that it allows experts to base their opinions on fact or data otherwise inadmissible. Plaintiff notes that it in effect creates a back door through which hearsay may be placed before the jury, and argues the rule does not give the offering party the right to disclose the inadmissible matter. Rule 703 does not directly address this problem, nor does Rule 705.

■ Here, the trial court, in considering whether the jury should be provided with the otherwise inadmissible hearsay, which was, in part, the basis of Dr. Cooper's testimony, concluded that the inadmissible hearsay used by this expert could be admitted solely to illustrate and explain his opinion. It was not otherwise admissible as evidence. We agree with this ruling.

In *American Universal Insurance Co. v. Falzone* (1st Cir. 1981), 644 F.2d 65, a State fire marshall testified that a fire was of human origin. Over defendant's objection, the marshall related that his opinion was based in part upon conversations with his colleagues that the fire had not been caused by the oil burner. The appellate court affirmed the trial court's ruling that such testimony was not objectionable so long as the jury was charged that the statement was not admissible for its truth but to show the basis for the opinion. Similarly, in *United States v. Madrid* (10th Cir. 1982), 673 F.2d 1114, *cert. denied* (1982), 459 U.S. 843, 74 L. Ed. 2d 88, 103 S. Ct. 96, in a trial for a bank robbery where the only issue was an insanity defense, the prosecution's psychiatrist testified, over an objection, that defendant had stated that he had committed other armed robberies to support his heroin addiction. The court permitted the testimony solely on the ground that it supported the expert's opinion concerning defendant's

sanity. The appellate court did not find error, as the reference to past crimes was an important basis for the expert's opinion. The court further observed that the jury was properly charged to consider it only as a basis for that opinion. See also *O'Gee v. Dobbs Houses, Inc.* (2d Cir. 1978), 570 F.2d 1084, 1089.

We are of the opinion that the use of Federal Rule 703 to place before a jury otherwise inadmissible hearsay raises a serious potential for abuse. Otherwise inadmissible material can be presented to a jury if an expert can be found to rely on it in giving his opinion. Like all exceptions to the hearsay rule, the full disclosure of the source underlying a testifying expert's opinion depends upon the two critical factors of necessity and trustworthiness. Here both necessity and trustworthiness were present. Here also the trial court's permitted disclosure of the hearsay underlying Dr. Cooper's opinion comported with the concerns of the hearsay rule, both because the evidence relied upon constituted a medical record prepared by an uninterested third party and because Dr. Cooper customarily relied upon third-party reports from the other staff doctors with whom he placed his trust, guaranteed the reliability of the evidence. We again caution that, without doubt, Rule 703 does provide opportunities for abuse. Here, though, we feel that the trial judge controlled conduct under the Rule by use of the limiting instruction which allowed the jury a more candid statement of the reasons supporting Dr. Cooper's conclusions.

We hold that, under the circumstances of this case, the conclusions of the nontestifying experts were admissible under Rule 705 as to the facts and data on which Dr. Cooper based his opinion.

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.