WILLIAM NOEL, Plaintiff-Appellant, v. CHARLIE JONES *et al.*, Defendants-Appellees (Charlie Jones, Counterplaintiff-Appellee; Samuel Johnson, Jr., *et al.*, Counterdefendants-Appellees).

Third District No. 3—88—0244

Opinion filed December 30, 1988.

Leroy A. Compton, of Goldfine & Bowles, P.C., of Peoria, for appellant.

Rex K. Linder and David A. Perkins, both of Heyl, Royster, Voelker & Allen, and James R. Morrison, of Westervelt, Johnson, Nicoll & Keller, both of Peoria, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff brought this action in the circuit court of Peoria County to recover damages for personal injuries he received when the automobile in which he was a passenger collided with a garbage truck. Plaintiff sued the drivers of both vehicles and the owner of the garbage truck. A special interrogatory tendered by plaintiff was refused and the jury rendered a verdict in favor of defendants and against plaintiff. Judgment was entered thereon, and the trial court denied plaintiff's post-trial motion for judgment notwithstanding the verdict (judgment *n.o.v.*) or, in the alternative, a new trial. Plaintiff appeals and we affirm.

Plaintiff William Noel (Noel) allegedly sustained injuries on August 26, 1983, the cause of which was a collision between a garbage truck and an automobile driven by defendant Charles Jones (Jones) in which Noel was a passenger. The garbage truck is owned by defendant Browning-Ferris Industries of Illinois, Inc. (BFI), and was operated by its employee, defendant Samuel Johnson, Jr. (Johnson).

Johnson testified that on August 26, 1983, he backed into the intersection of Barker and Institute Streets in Peoria, Illinois, at the direction of his helper Burt Kancke (Kancke), who was standing on the back step of the truck. Johnson said he backed up about three or four feet into the intersection and stopped when Kancke hollered. The Jones car then sideswiped the stationary truck. Johnson did not see the Jones vehicle until the accident occurred. Johnson indicated the garbage truck can go between two and four miles per hour in reverse gear.

There was no damage to the truck and the damage to the Jones vehicle was a scratch about three feet long. Johnson said Noel asked him for a cigarette after the accident. Noel did not complain or appear injured.

Jones testified he stopped his vehicle at a stop sign at the intersection of Barker and Institute Streets. Noel was sitting in the passenger seat. Jones said he saw a garbage truck turn right at the intersection and stop. The man on the back of the garbage truck (Kancke) motioned for Jones to proceed through the intersection. As the Jones vehicle moved slowly forward, the garbage truck proceeded to back up. Kancke signaled the garbage truck to stop, but the truck continued to back up. Jones testified he proceeded through the intersection slowly at first, but when he saw the truck was not stopping he accelerated and swerved his vehicle in an attempt to avoid a collision. Both vehicles were moving slowly at the time of the impact. Kancke was unavailable to testify, but Jones was allowed to tell the jury that after the accident Kancke said, "I tried to stop the guy, but he wouldn't stop." At the scene of the accident, Noel told Jones he had a "funny feeling" in his neck. Jones sought medical attention for pain in his shoulders and lower back after the accident, but did not report his injuries or Noel's complaint to the police officer on the scene.

Noel testified he was a passenger in the car driven by Jones. He remembered seeing the garbage truck make a right turn onto Barker just before the Jones vehicle stopped at the stop sign. After the car stopped, Noel testified he dropped his cigarette and bent over to pick it up. When he looked up he saw the garbage truck was about to hit Jones' car. The latter vehicle sped up and swerved to the right, and the garbage truck made contact with the car on the driver's side. Noel said he was thrown against the passenger door; however, his treating physician testified he took a history from Noel four days later and Noel indicated the accident caused him to go forward and backward in his seat. Noel said he told Jones his neck and shoulder "felt funny" after the accident, yet Noel did not complain of injury to

the investigating police officer or to Johnson.

After the accident, Noel returned to work at a car repair shop where he hand-sanded a car. That night, Noel noticed some pain in his neck and shoulder and sought treatment at a hospital emergency room. X rays were taken and Noel was given a cervical collar and pain medication. The X rays were interpreted as normal.

When his pain did not subside, Noel went to see his lawyer, who referred him to Dr. Daniel Hoffman. Hoffman hospitalized Noel for seven days where he received therapy twice a day for the pain in his neck, shoulder, and lower back. After Noel was released from the hospital, he received further therapeutic treatment from Dr. Sureka at the Institute of Physical Medicine and Rehabilitation (IPMR). Dr. Hoffman referred Noel to Dr. Sureka for therapy.

Both Drs. Hoffman and Sureka testified they diagnosed Noel as suffering from cervical and right shoulder strain which they believed was caused by the August 26, 1983, automobile accident. The doctors testified Noel was a well-developed, well-nourished young man without any peculiar susceptibility to soft tissue injury.

The medical bills Noel incurred totalled $4,268.38. The doctors indicated the amount charged for their respective services was reasonable and necessary.

Dr. Hoffman testified that between 1984 and 1986 he received 653 referrals from the law firm representing Noel in this case. Hoffman in turn referred 542 of those patients to the IPMR where Dr. Sureka practices.

Dr. Sureka testified his firm received about 300 referrals from Dr. Hoffman in 1983 and 95% of those patients complained of personal injury. A large percentage of those patients were represented by the law firm representing Noel in this case. Dr. Sureka had been receiving a similar volume of referrals from Dr. Hoffman for about four or five years. In every one of the cases referred by Noel's lawyers, Dr. Sureka found the patients needed some kind of treatment related to their traumatic injury. Dr. Sureka testified it has been the practice of IPMR to address the bills of referred clients to the plaintiffs' law firm and to wait for payment until the lawsuit is tried or settled.

Larry Stuart, the operations manager for BFI, testified he was at the scene of the accident shortly after it occurred. Stuart's investigation revealed there was no damage to the truck and the Jones vehicle sustained a "crease *** the length of the quarter panel, right behind the door, on the left side." Stuart testified as to the BFI procedure for backing up a garbage truck. If two men are on the truck, the man on the ground directs the driver as to when and how to back up. The

only view the driver has in his rearview mirror is of the man on the ground.

At the close of the defendants' case, counsel for Noel made a motion for directed verdict on the issue of the liability of all the defendants and requested that the jury decide the issue of damages only. The motion was denied. A special interrogatory tendered by Noel was refused and the jury returned a verdict in favor of the defendants.

In his post-trial motion, Noel asked the court to enter judgment, notwithstanding the verdict of the jury, in favor of him and against one or all of the defendants. In the alternative, Noel requested a new trial on the issue of damages only. The motion was rejected. On appeal, Noel argues (1) the trial court should have granted his request for a directed verdict or judgment *n.o.v.* and ordered a new trial on the issue of damages only, (2) he is entitled to a new trial because the jury verdict is against the manifest weight of the evidence, and (3) it was error for the trial court to refuse to submit his proposed special interrogatory to the jury.

First, we address the propriety of the circuit court's rulings on the motions for directed verdict and judgment *n.o.v.*

■ The supreme court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, set the same standard for directing verdicts and entering judgments *n.o.v.* The *Pedrick* rule is that a motion for a directed verdict or judgment *n.o.v.* shall be granted "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14.

■ Noel twice asked the court to find defendants liable in negligence based on the evidence and to order a new trial solely on the issue of damages. The well-known requirements of a negligence action are: (1) the existence of a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) injury to the plaintiff; and (4) a causal connection between the breach and the injury. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.) To direct a verdict or enter judgment *n.o.v.* in favor of Noel, the trial court would have had to be convinced by the evidence that an act or omission of one or more of the defendants was the proximate cause of Noel's alleged injuries, and that Noel was in fact injured as a result of the accident. An examination of the evidence is necessary in order to decide whether it, when viewed in a light most favorable to the defendants, overwhelmingly favored a verdict for Noel.

In this particular case, Johnson backed a BFI-owned garbage

truck into an intersection, apparently at the direction of Kancke, where it collided with the automobile in which Noel was riding. Jones indicated Kancke also motioned the car to proceed through the intersection.

Noel claimed injury from the accident to his neck, back, and right shoulder. Dr. Hoffman indicated he last treated Noel four months after the accident. At that time, Noel did not have any complaints and no physical problems were found. This suit was filed about 19 months later at a time when Noel was free of complaints. Defendants were thus unable to order an independent physical evaluation of Noel to investigate his claimed injuries. (107 Ill. 2d R. 215.) Lacking direct evidence to refute the alleged injuries, defendants presented circumstantial evidence (1) demonstrating the improbability of the claimed injuries and (2) attacking the credibility of Noel and his physicians. Defendants argue these same points on appeal.

First, defendants argue it is improbable Noel was injured as a result of the accident because the nature of the impact was slight. When viewed in a light most favorable to defendants, the evidence shows the garbage truck, if it was moving at all, was traveling at a very slow rate of speed in reverse gear when the two vehicles made contact. Jones said he proceeded through the intersection slowly, but swerved and accelerated his vehicle when he saw the truck backing into him.

There was no damage to the truck and the Jones car suffered a minor scratch. Both the truck and the car were older vehicles. The investigating police officer testified when more mature vehicles are involved in an accident, it is common for dirt and debris to be knocked loose from the fenders or wheel wells. The officer did not observe that any type of debris was loosened from the vehicles involved in this accident. The jury could have been convinced by these facts the impact was not great enough to cause injury to plaintiff.

Next, defendants suggest it is physically impossible for Noel to have suffered the complained-of injuries. It is undisputed the car was hit on the left side, yet Noel testified the impact caused him to hit his right shoulder on the passenger door. When asked to explain how he injured his right shoulder when the car was swerving to the right and was hit on the left, Noel said he was thrown to the right because the impact lifted the car off the ground. Noel was the only witness who so testified. Dr. Hoffman said Noel reported the accident caused him to move forward and backward in his seat. The doctor treated Noel for pain in his right shoulder, neck, and lower back.

By and large the testimony was that Noel did not appear injured

after the accident. The only complaint Noel made was to Jones that his neck felt funny. Immediately following the accident, Noel asked Johnson for a cigarette but did not complain of pain. Neither Stuart nor the investigating police officer observed or was told that anyone was injured as a result of the accident. Noel immediately went back to work hand-sanding a car. Later he went to the hospital, where he was treated and released. No abnormalities were revealed by his X rays.

■ Finally, defendants suggest the credibility of Noel and his physicians was questioned by the long-standing referral system between the law firm representing Noel and Drs. Hoffman and Sureka. We agree it was for the jury to determine the believability of the doctors' testimony as to Noel's injuries, their cause, and the reasonable cost of their treatment in light of the high volume of referrals between Noel's lawyers and Hoffman and between Hoffman and Sureka. Certainly it was proper for the jury to consider the "steady stream of lucrative referrals" from plaintiff's attorney to the treating physicians when evaluating the credibility, bias, and financial interest of the physicians. *Sears v. Rutishauser* (1984), 102 Ill. 2d 402, 410, 466 N.E.2d 210, 214.

■ Defendant Jones argues the trial court properly refused to direct a verdict or enter judgment *n.o.v.* because the evidence did not support a finding he was liable for Noel's injuries. Jones insists he exercised due care in operating his vehicle. Due, ordinary, and reasonable care are interchangeable terms meaning that degree of care which ordinarily prudent persons would exercise in light of the apparent risk. *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204; *Langston v. Chicago & Northwestern Ry. Co.* (1946), 330 Ill. App. 260, 70 N.E.2d 852, *aff'd* (1947), 398 Ill. 248, 75 N.E.2d 363.

The evidence does not refute the testimony that Jones dutifully stopped at the stop sign. Having stopped, the law required Jones to yield the right of way to any vehicle which constituted an immediate hazard. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—904(b); *Pennington v. McLean* (1959), 16 Ill. 2d 577, 158 N.E.2d 624.) In *Pennington,* the court found no precise formula can determine whether a motorist exercised due care and declared the question of due care is one for the jury to decide after considering all relevant facts. The facts in this case show that after Jones stopped at the stop sign, he was signaled forward by Johnson's helper on the back of the garbage truck. Johnson did not see the Jones vehicle and proceeded to back up according

to BFI procedure and at the direction of Kancke. Both vehicles were moving slowly.

Questions of negligence, due care, and proximate cause are ordinarily questions of fact for the jury to decide. The supreme court in *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74, said:

> "Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fairminded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function." *Ney*, 2 Ill. 2d at 84, 117 N.E.2d at 80.

It is error to direct a verdict or enter judgment *n.o.v.* where the evidence demonstrates a substantial factual dispute or where the assessment of the credibility of witnesses may be decisive of the outcome. (*Romano v. Bittner* (1987), 157 Ill. App. 3d 15, 510 N.E.2d 924; *Cadral Corp. v. Solomon, Cordwell, Buenz & Associates, Inc.* (1986), 147 Ill. App. 3d 466, 497 N.E.2d 1285.) In *Henry v. Brenner* (1985), 138 Ill. App. 3d 609, 486 N.E.2d 934, the third district found it was proper for the trial court to refuse to direct a verdict or enter judgment *n.o.v.* when the issues of liability and damages were substantially in dispute. The court found "it was the function of the jury to resolve these disputes from its assessment of the credibility of the evidence." (*Henry*, 138 Ill. App. 3d at 613, 486 N.E.2d at 936.) The court went on to hold that "where impact of the vehicles was at a slow speed which caused minimal damage to the plaintiff's automobile, we cannot say that the collision was inexcusable or that defendant was negligent as a matter of law." *Henry*, 138 Ill. App. 3d at 613, 486 N.E.2d at 936.

Application of the *Pedrick* rule reveals the evidence, when viewed in a light most favorable to defendants, did not overwhelmingly show they were negligent as a matter of law so as to warrant a directed verdict or judgment *n.o.v.* on the issue of liability. The trial court wisely allowed the jury to decide whether the truck constituted an immediate hazard, whether it was negligent for Jones to proceed through the intersection in the face of that hazard, and whether Johnson exercised due care in backing the truck. The jury was clearly in the best position to determine from the facts if the defendants were negligent, if their negligence was the proximate cause of the accident,

and if Noel was injured thereby. Since the jury's resolution of these questions involved an assessment of the credibility of expert witnesses, the parties and the circumstantial evidence they presented, we find the motions for a directed verdict and judgment *n.o.v.* were properly denied.

■ Next, we resolve whether Noel is entitled to a new trial, a question which depends on whether the jury's verdict in favor of the defendants was against the manifest weight of the evidence. (*Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.) The verdict for defendants is against the manifest weight of the evidence only if it is palpably erroneous and unwarranted and if it is clear the verdict should have been in Noel's favor. (*Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 412 N.E.2d 1037.) It is solely for the jury to consider conflicts in evidence, the weight of the evidence, or the credibility of witnesses. Therefore, when reviewing questions of negligence and proximate cause, an appellate court will not disturb the jury's verdict unless it is clearly unwarranted by the evidence. (*Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 479 N.E.2d 1091.) Where several reasonable inferences based on the evidence are possible, the inference drawn by the fact finder must prevail. *Rankin v. Hojka* (1976), 42 Ill. App. 3d 440, 355 N.E.2d 768.

■ Although we do not know the precise reason behind the jury's verdict in this case, the jury could have reached several reasonable conclusions based on the evidence presented which would properly release defendants from liability in negligence. We find the manifest weight of the evidence already discussed supports the verdict for defendants on the facts of this case.

Finally, we address the question whether it was error for the trial court to refuse submission of Noel's proposed special interrogatory to the jury. We conclude no error was committed.

The special interrogatory at issue was tendered by Noel in the form of two questions on a single verdict form. Interrogatory No. 25 inquired as follows:

> "Do you find that defendant CHARLIE JONES was negligent in one or more of the ways claimed by the plaintiff?
> _____ YES _____ NO
> Do you find that defendant SAMUEL JOHNSON was negligent in one or more of the ways claimed by the plaintiff?
> _____ YES _____ NO."

The court denied the interrogatory, saying:

> "[T]he burden of proof instruction and the issues instructions clearly set forth the duty of the jury. ***

I.P.I. *** merges those concepts under one instruction on the burden of proof, and I do not believe that [section 2—1108] was intended to call for an instruction or a special interrogatory such as this, so Plaintiff's No. 25 will be refused."

The use of special interrogatories is governed by statute. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1108.) Section 2—1108 of the Code of Civil Procedure provides:

"Verdict-Special interrogatories. Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly." Ill. Rev. Stat. 1987, ch. 110, par. 2—1108.

 Special interrogatories are used to test the general verdict against the jury's opinion as to one or more specific questions of ultimate fact. (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464; *Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 406 N.E.2d 544; *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.) A special interrogatory in proper form *must* be submitted to the jury. The trial court has no discretion (*Larson v. Thomashow* (1974), 17 Ill. App. 3d 208, 307 N.E.2d 707), even if the subject matter of the special interrogatory is covered by an instruction (*Hollis v. Terminal R.R. Association* (1966), 72 Ill. App. 2d 13, 218 N.E.2d 231). A special interrogatory is in proper form if it relates to an ultimate question of fact upon which the rights of the parties depend (*Estate of Constas v. Constas* (1976), 42 Ill. App. 3d 223, 355 N.E.2d 683), and an answer responsive thereto might be inconsistent with a general jury verdict. *Warren*, 142 Ill. App. 3d 550, 491 N.E.2d 464; *Stach v. Sears, Roebuck & Co.* (1981), 102 Ill. App. 3d 397, 429 N.E.2d 1242.

At trial plaintiff's counsel explained his reason for submitting the special interrogatory as follows:

"[L]et's say a jury returned a not guilty [verdict] as to both defendants. The reason for giving this instruction is for us to be able to determine if they found the defendants were not

negligent or that they were negligent but the plaintiff wasn't injured as a result of their negligence."

On appeal plaintiff maintains the special interrogatory was in proper form and should have been used to test the general verdict against the jury's opinion whether the defendants were negligent. Because the interrogatory was refused, plaintiff laments the fact he is unable to tell the exact reason why the verdict was tendered in favor of the defendants.

Both defendants contend the special interrogatory was properly refused because it was tendered in an improper form. Specifically, the interrogatory did not relate to an ultimate issue of material fact because it inquired only of the defendants' negligence and omitted any reference to proximate cause. Plaintiff suggests the issue of negligence in an ordinary negligence (rather than contributory negligence) case is a material question of fact in and of itself. Because an ultimate question of fact does not require all the elements necessary for a finding of guilt, it need not be accompanied by the proximate cause element. We disagree.

 The supreme court in *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 136, 254 N.E.2d 453, 456, *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697, held ineffective an interrogatory on the issue of contributory negligence because, although it asked if plaintiff was exercising due care, it failed "to include the additional element of whether his \*\*\* negligence proximately contributed to his injuries." It is clear, then, that for a special interrogatory relating to the contributory negligence of a plaintiff to be proper in form and address the ultimate issue of fact, it must contain both the elements of negligence and proximate cause. *Laughlin v. Chenoweth* (1980), 92 Ill. App. 3d 430, 414 N.E.2d 1296; *DeBolt v. Wallace* (1964), 56 Ill. App. 2d 380, 206 N.E.2d 469.

The court in *Snow v. Farwick* (1970), 121 Ill. App. 2d 40, 257 N.E.2d 155, came to the same conclusion in a case which did not involve the defense of contributory negligence. In *Snow*, an automobile passenger was injured in an automobile-truck collision. The passenger sued the driver and owner of the truck. Defendants tendered a special interrogatory which was submitted to the jury as follows: "Was the defendant, JOHN R. FARWICK, guilty of negligence which was the proximate cause of the plaintiff's alleged injuries?" (*Snow*, 121 Ill. App. 2d at 46, 257 N.E.2d at 158.) On appeal plaintiff argued it was error to submit the interrogatory because it was ambiguous and confusing for its inclusion of three questions relating to negligence, causation, and injuries respectively. The court disagreed and gave the fol-

lowing explanation:

> "Each of the above questions are evidentiary in nature in that none of them singly are determinative of the rights of the parties. Plaintiff cannot prevail if he was not injured, nor if defendant was not negligent, nor if his injuries were not proximately caused by a negligent act of the defendant. *All three items, negligence, causation, and injury are necessary to plaintiff's case. The absence of one of these items would render the interrogatory improper for failure to relate to the question of ultimate fact.* \*\*\* [T]he basis for recovery of damages is the causal connection between the negligent act or omission and the injury sustained. The law is concerned with negligence as the proximate cause, not of some physical force applied against the person injured, but rather the end result; *i.e.*, the injuries themselves." (Emphasis added.) *Snow*, 121 Ill. App. 2d at 46, 257 N.E.2d at 158-59.

Defendants further argue the special interrogatory was correctly refused because an affirmative answer thereto would not have been inconsistent with a general verdict in favor of defendants. In other words, it would not have been inconsistent for the jurors to both render a general verdict for defendants and indicate they were negligent via the special interrogatory. The special interrogatory would not control the general verdict in such a situation when the jury could have concluded either that such negligence did not cause the collision or that plaintiff did not sustain compensable injury. We agree.

In *Cohen v. Sager* (1971), 2 Ill. App. 3d 1018, 278 N.E.2d 453, the first district held the special interrogatories answered by the jury were insufficient to control the general verdict. In that case the plaintiff sued the defendant for injuries sustained when the automobile in which plaintiff was a passenger was struck by the defendant's vehicle. Contributory negligence was not an issue.

The special interrogatories answered by the jury were:

> " '(1) Was the proximate cause of the accident the inclement weather and icy conditions that existed at the time of the occurrence? No.
>
> (2) Was the defendant guilty of any negligence which proximately contributed to cause the occurrence in question? Yes.' "

(*Cohen*, 2 Ill. App. 3d at 1019, 278 N.E.2d at 454.)

There were no special findings as to the plaintiff's injuries or whether the defendant's negligence was the proximate cause of the plaintiff's injuries.

The *Cohen* court held as follows:

"The special findings did not exclude every reasonable hypothesis consistent with the general verdict. It is entirely consistent with reason that the jury found that while the defendant was negligent in causing the collision, no injury was suffered or that her injury was not proximately caused by the defendant's negligence. We hold that these special findings do not control the general verdict and that the trial court was in error." (*Cohen*, 2 Ill. App. 3d at 1020-21, 278 N.E.2d at 456.)

Because the interrogatory did not address every element necessary to plaintiff's case, it was both in harmony with the general verdict and, under the reasoning in *Snow*, failed to relate to a question of ultimate fact.

For the same reasons, we conclude the trial court properly refused to submit plaintiff's special interrogatory No. 25. The ultimate issue of fact to be decided by the jury was whether either or both of the defendants were negligent. Negligence is an act or omission to act which is the proximate cause of someone's injury. Under *Snow*, all of the elements must be addressed in a special interrogatory for it to be proper in form. Moreover, if one of these elements is omitted, like in *Cohen*, the special interrogatory is insufficient to override the general verdict.

Application of the analysis of both *Snow* and *Cohen* to this case reveals the interrogatory was inadequate, not because it was repetitive of the jury instructions, but because (1) it did not address the elements of proximate cause and injury and (2) an affirmative answer to it would not have controlled a general verdict in favor of the defendants. The function of special interrogatory is to check the jury's comprehension of the case by comparing the verdict to its conclusions as to the ultimate facts. (*Vuletich v. Bolgla* (1980), 85 Ill. App. 3d 810, 407 N.E.2d 566.) Plaintiff's interrogatory as tendered could not have fulfilled that purpose and was properly rejected by the trial court.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

McCULLOUGH and LUND, JJ., concur.