JACK H. WORTHY, Plaintiff-Appellee, v. NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District   No. 5—92—0464

Opinion filed September 13, 1993.

Thompson & Mitchell, of Belleville (Thomas W. Alvey, Jr., Kurt E. Reitz, and Mary Sue Juen, of counsel), for appellant.

Sandor Korein and Michael B. Marker, both of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of East St. Louis, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The Norfolk and Western Railway Company (Railway) appeals from a judgment entered against it and in favor of the plaintiff in the amount of $1,366,000. We affirm.

Only one issue is presented on appeal: whether the trial court properly instructed the jury concerning the circumstances under which preexisting conditions are compensable. Before discussing the instructions at issue, it is necessary to provide a factual background of the case.

Plaintiff, Jack Worthy, brought this action under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (1988)) to recover dam-

ages for the Railway's alleged negligence in allowing one of its loco- motives to ram into a building at the Luther Yards where plaintiff, a machinist, was working on a truck on July 14, 1989. Worthy claimed that his head, neck, shoulder, back, and legs were injured when the locomotive struck the truck he was repairing. The Railway did not contest Worthy's motion for summary judgment on the issue of liabil- ity, and the case proceeded to trial on the issue of damages only.

Jack Worthy testified that he began working for the railroad in 1965, and at some point he was assigned to the Luther Yards. As a machinist Worthy repaired locomotives and off-track equipment. He testified that before July 14, 1989, he was capable of performing any job that was assigned to him by the railroad, except for a three months' absence from work in 1987 when he had his gallbladder re- moved. He testified that he has been bowlegged since birth and that at times prior to the accident of July 14, 1989, he experienced sore knees after a long day's work, but he had never sought medical treat- ment for his legs. Worthy also testified that he never required medical treatment for his neck, shoulder, or back before the accident. After the accident he was hospitalized, treated by his physician Dr. Satta, an internist, and referred to Dr. James Segrist, an orthopedist.

Dr. James Segrist testified that he first examined Worthy on Au- gust 8, 1989. Segrist testified that Worthy complained of

"neck pain, shoulder pain, low back pain and both of his knees pain, [sic] hurting him. He was also complaining of some tin- gling into his legs, stiffness about his neck. He was also com- plaining of a headache, a headache that would go over the back of his head, that would be there in the morning when he's [sic] wake up, that would get somewhat better, and then it would worsen by the evening. And those were his major complaints."

Worthy denied having any health problems prior to the accident, other than aching in his knees. Segrist opined that based on a reasonable degree of medical certainty, the orthopedic problems with Worthy's neck, shoulder, and back were directly related to the accident. He treated Worthy's neck, shoulder, and back injuries with physical ther- apy and medication.

With regard to Worthy's neck, Segrist testified that Worthy had limitation of motion and that the back side of his neck was tender. When Worthy bent his head to the left, he would have some spasm in his neck. In Segrist's opinion Worthy had a cervical strain, and his headaches were related to his neck problem.

As for the shoulder injury, when Worthy attempted to raise his right arm, overhead pain would intensify and he would feel a grinding

sensation. Segrist testified that Worthy had a mild irritation of the median nerve at the wrist, which is frequently found in patients with shoulder injuries.

Most of Worthy's complaints about his back were centered in the lower-back area. He had some mild restriction of motion of the back, but all of his reflexes were intact. Segrist testified that he believed Worthy had lumbar radicular syndrome, a mild irritation of the nerve up his back, which created some findings down his leg. Segrist also felt that Worthy had a strain of his back.

As for Worthy's knees, Segrist noted: "[The patient] had rather marked bowing of the legs. He had some roughness up under his kneecaps[;] he had some tenderness around his kneecaps. He had some tenderness on the inside part of his knees." Segrist testified that Worthy's bowleggedness, pigeon-toedness, and arthritis of the knees predated the accident.

Segrist performed an operation on Worthy's left knee in September 1989. During the operation Segrist performed an osteotomy to correct the bowleggedness. In addition to correcting leg and knee problems which existed prior to the accident, Segrist discovered a new tear of the medial meniscus, which he concluded was the result of the July 1989 accident. Segrist opined that the trauma which caused the new tear also caused mild aggravation of his preexisting conditions. He explained: "If you take somebody with an arthritic condition in their (*sic*) knee and wrench it real good, that patient will have pain. So, in that sense he had an aggravation." In January 1990, Worthy underwent a similar surgery to his right knee. Segrist testified that he again found a torn cartilage which he believed was due to the trauma of the accident. Segrist testified that while the trauma which caused the torn cartilage may have aggravated Worthy's preexisting arthritic condition, Segrist did not find any profound injury to the preexisting arthritic condition.

Segrist testified that even if the July 14, 1989, accident had not occurred, Worthy would have had to have the osteotomies performed within 5 to 10 years because of the preexisting problems with his knees. The interjection of the accident required Worthy to have the osteotomies earlier. However, if the only problem with his knees had been the two tears of the menisci, Segrist could have treated Worthy with an arthroscopic-type surgery, which would not have involved cutting the bone.

Segrist testified on cross-examination that Worthy had a preexisting osteoarthritic condition in the thoracic and cervical spine. In his opinion, while the accident caused an aggravation of these preexisting

conditions, by the time of trial plaintiff's head, neck, and shoulder complaints had resolved. Segrist acknowledged that the back pain was further irritated by virtue of the knee surgeries.

At the jury instruction conference defendant tendered non-Illinois Pattern Jury Instructions numbered 9 and 10 concerning plaintiff's preexisting condition.

*Instruction No. 9*

"If you find that the plaintiff's injury was due in part to a pre-existing condition and in part to defendant's aggravation of that pre-existing condition, you must determine how much of the plaintiff's injury is due to his pre-existing condition and how much of his present injury is a result of defendant's aggravation of his pre-existing condition. Defendant can only be held responsible for that portion of plaintiff's present injury that is the result of defendant's aggravation of his pre-existing condition."

*Instruction No. 10*

"There is evidence that plaintiff had a pre-existing knee condition prior to the accident complained of here and for which defendant is not liable or responsible. In arriving at the amount of your verdict, you should not consider any pecuniary loss caused by the pre-existing knee condition which would have resulted independently of the accident. You should not consider any medical or hospital expenses incurred by reason of the pre-existing knee condition which would have occurred independently of the accident. If you should find that all damages which plaintiff claims to have sustained from and after July 14, 1989, are solely attributable to the progression of the pre-existing knee condition, you should not assess any damages in favor of the plaintiff and against the defendant."

Over defendant's objection, the trial court gave plaintiff's instruction number 8 on the issue of aggravation of a preexisting condition. This instruction is a slightly modified version of Illinois Pattern Jury Instructions, Civil, No. 30.21 (3d ed. 1989) (hereinafter IPI Civil 3d):

"You may not deny or limit the plaintiff's right to damages resulting from this occurrence because of any injury resulted [*sic*] from an aggravation of a pre-existing condition or a pre-existing condition which rendered the plaintiff more susceptible to injury."

Over defendant's objection, the trial court also gave plaintiff's instruction number 1, a modified version of IPI Civil 3d No. B21.03:

"The plaintiff has the burden of proving each of the following propositions:

First, that the plaintiff was injured:

Second, that the negligence of the defendant was a cause in whole or in part of the injuries to the plaintiff."

There are two pattern jury instructions concerning compensation for preexisting conditions: IPI Civil 3d No. 30.03, which makes "[t]he aggravation of any pre-existing ailment or condition" a compensable element of damages, and IPI Civil 3d No. 30.21, which provides that damages are not to be reduced because aggravation of some preexisting condition contributed to the plaintiff's injury or rendered the plaintiff more susceptible to such injury. The jury received both of these instructions. The Railway argues that the trial court's refusal to give defendant's tendered non-IPI instructions 9 and 10, coupled with the giving of plaintiff's instructions 1 and 8, allowed plaintiff's counsel to make improper and inflammatory argument to the jury on what it should consider when awarding the plaintiff monetary damages.

*Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 394 N.E.2d 391, held that the trial court erred in failing to instruct the jury that damages should not be reduced because the injury was due in part to an aggravation of a preexisting condition. IPI Civil 3d No. 30.21 was promulgated in response to *Balestri*. (*Dabros v. Wang* (1993), 243 Ill. App. 3d 259, 268, 611 N.E.2d 1113, 1119.) Subsequent cases have held that this instruction accurately states the law on aggravation of a preexisting condition in Illinois. (*Dabros*, 243 Ill. App. 3d at 268, 611 N.E.2d at 1120; *Grimming v. Alton & Southern Ry. Co.* (1990), 204 Ill. App. 3d 961, 983, 562 N.E.2d 1086, 1099-1100.) Supreme Court Rule 239(a) requires the use of IPI instructions on a particular issue unless the court determines that they do not accurately state the law. (134 Ill. 2d R. 239(a); *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 394 N.E.2d 391.) A litigant has the right to have instructions submitted to the jury which inform it of the issues presented, the legal principles to be applied, and the facts that must be proved to support a verdict. *Friedman v. Park District of Highland Park* (1986), 151 Ill. App. 3d 374, 388, 502 N.E.2d 826, 837.

■ Applying these principles to the case at bar, we do not believe the trial court abused its discretion in concluding that the IPI instructions correctly and adequately informed the jury on the issue of aggravation of a preexisting condition. The test is whether, taken as a whole, the instructions are clear enough so as not to mislead and they fairly and accurately state the applicable law. (*Friedman*, 151 Ill.

App. 3d at 388, 502 N.E.2d at 837.) We are unpersuaded by the defendant's argument that the instructions permitted the plaintiff to argue that the Railway was to compensate the plaintiff for his preexisting condition or that the instructions directed the jury to compensate Jack Worthy for his preexisting condition. Moreover, we agree with the plaintiff that the use of non-IPI instructions in addition to IPI instructions is inappropriate where the IPI instructions correctly and adequately charge the jury. (*Rios v. Navistar International Transportation Corp.* (1990), 200 Ill. App. 3d 526, 535, 558 N.E.2d 252, 259.) We conclude, therefore, that the trial court did not err in refusing to give the non-IPI instructions tendered by defendant.

■ Defendant also argues plaintiff's instruction number eight was incomplete because it deals only with a plaintiff's right to recover damages if the plaintiff can prove that the defendant's negligence aggravated a preexisting condition. Defendant argues that this instruction did not provide the jury with any guidance on how a preexisting condition should be considered if no causal connection was shown. We disagree. *Grimming v. Alton & Southern Ry. Co.* (1990), 204 Ill. App. 3d 961, 562 N.E.2d 1086, rejected the argument that IPI Civil 3d No. 30.21 could mislead a jury into believing that it should award damages for preexisting conditions which were not aggravated by the defendant's negligence. "Rather, we find that the instruction correctly stated the law in Illinois that a tortfeasor is liable for the injuries he causes, even though the injuries consist of the aggravation of a preexisting condition." *Grimming*, 204 Ill. App. 3d at 983, 562 N.E.2d at 1100.

The Railway further maintains that its tendered instructions would have given the jury the guidance necessary to distinguish between plaintiff's preexisting conditions and any aggravation of those preexisting conditions. Defendant cites *Greenfield v. Consolidated R. Corp.* (1986), 150 Ill. App. 3d 331, 500 N.E.2d 1083, in support of its position. We note that while defendant's tendered instruction number 10 is premised on *Greenfield*, that case was decided prior to the October 15, 1988, approval of IPI Civil 3d No. 30.21. (See *Grimming*, 204 Ill. App. 3d at 982, 562 N.E.2d at 1099.) After the promulgation of IPI Civil 3d No. 30.21, it became more appropriate to give it than to give the instruction approved by *Greenfield*.

■ The trial judge also refused defendant's special interrogatories numbers 1 through 4 which read:

*Interrogatory No. 1:*

"Did the plaintiff's claimed accident which is the subject of this suit in whole or in part aggravate the plaintiff's pre-existing condition?"

*Interrogatory No. 2:*

"If your answer to Interrogatory No. 1 was 'yes,' then were you able to determine what portion of plaintiff's present condition resulted from the aggravation of his condition?"

*Interrogatory No. 3:*

"If you were able to determine what portion of plaintiff's present condition resulted from the aggravation of his condition, then what percentage of plaintiff's present condition was caused by the injuries he suffered as a result of the claimed accident which is the subject of this suit?"

*Interrogatory No. 4:*

"If you were able to give a percentage in answer to Interrogatory No. 3, then have you taken this percentage into consideration in reducing the amount of damages that you have awarded the plaintiff in your verdict?"

Plaintiff submits that the trial court properly refused to give the special interrogatories because they do not concern an ultimate issue of material fact. We agree.

A special interrogatory requires the jury to determine one or more specific issues of ultimate fact and serves as a check upon the jury's deliberations. (*Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 38, 406 N.E.2d 544, 550.) A special interrogatory is in proper form if it relates to an ultimate question of fact upon which the rights of the parties directly depend and an answer responsive thereto might be inconsistent with a general jury verdict. *Ross v. Aryan International, Inc.* (1991), 219 Ill. App. 3d 634, 650, 580 N.E.2d 937, 947; *Noel v. Jones* (1988), 177 Ill. App. 3d 773, 783, 532 N.E.2d 1050, 1056.

The Railway argues that the special interrogatories were related to an ultimate issue of fact, namely, the aggravation of plaintiff's pre-existing condition. While at first glance the special interrogatories appear to relate to the issue of aggravation, taken as a whole they relate to the issue of the reduction of damages. Special interrogatories 1 through 3 merely lay the foundation for directing the jury to reduce the amount of plaintiff's award of damages in interrogatory number 4.

We further find that the special interrogatories were not in proper form because an answer responsive thereto would not be inconsistent

with a general verdict that might be returned. (See *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 578, 491 N.E.2d 464, 482.) Whether the interrogatories were answered affirmatively or negatively, they would not have been inconsistent with any general verdict here. To illustrate, even if the jury had answered interrogatory number 1 in the negative, it still could have returned a general verdict for the plaintiff based upon the new injury to his menisci. Likewise, the jury's general verdict for the plaintiff could not have been affected by any answer to the remaining three special interrogatories. In terms of the general verdict, it made no difference whether the jury was able to determine what portion of plaintiff's present condition resulted from aggravation of preexisting conditions (interrogatory number 2), what percentage of plaintiff's condition at the time of trial was due to the accident (interrogatory number 3), or whether the jury had taken this percentage into account before reaching its verdict (interrogatory number 4).

We conclude that the trial court properly refused to submit defendant's special interrogatories 1 through 4 because they did not relate to an ultimate issue of material fact and a response thereto would not have been inconsistent with a general verdict. The function of the special interrogatory is to check the jury's understanding of the case by comparing the verdict to its conclusions as to the ultimate facts. (*Noel v. James*, 177 Ill. App. 3d at 786, 532 N.E.2d at 1058.) Defendant's interrogatories did not fulfill that purpose and were properly rejected by the trial court.

We conclude that the trial court properly instructed the jury concerning the circumstances under which plaintiff's pre-existing condition was compensable. For the foregoing reasons, we affirm the decision of the circuit court of Madison County.

Affirmed.

LEWIS and MAAG, JJ., concur.