EVA PODOBA, Plaintiff-Appellant, v. PYRAMID ELECTRIC, INC., *et al.*, Defendants-Appellees.

Fifth District    No. 5—95—0263

Opinion filed June 25, 1996.—Rehearing denied July 18, 1996.

Callis, Papa, Hale, Jensen, Jackstadt, Bailey & Halloran, P.C., of Granite City, for appellant.

Thomas E. Jones and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Plaintiff, Eva Podoba, appeals from a judgment of the circuit court of Madison County entered after the jury returned a verdict in favor of defendants, Pyramid Electric, Inc., and Gary LeRuez, arising from a negligence action involving a rear-end collision.

In this cause, plaintiff raises two issues for our consideration: (1) whether the jury verdict is against the manifest weight of the evidence, and (2) whether the trial court erred in instructing the jury

concerning the issue of aggravation of a preexisting condition. We reverse and remand. In light of our disposition of this cause, we need only address the jury-instruction issue.

## I

On the morning of October 13, 1988, an automobile driven by plaintiff was traveling on Nameoki Road, in Granite City. Plaintiff was headed for Jill Avenue in her 1976 Pontiac. Plaintiff was in the left northbound lane as she approached Jill Avenue. The weather was clear and sunny. Defendant Gary LeRuez (hereinafter referred to as defendant), an employee of defendant Pyramid Electric, Inc., was driving a Pyramid pickup truck, also in the left northbound lane of Nameoki Road. He was looking for a delivery site in Granite City. Defendant had been following plaintiff for several blocks before the intersection of Jill Avenue. As plaintiff approached the intersection of Jill Avenue and Nameoki Road, she slowed down to a stop because the light had turned red and another car was stopped at the intersection. It is unclear from the record whether the light was red or yellow when plaintiff reached the intersection. Defendant testified that the light had turned yellow. Defendant stated that he saw plaintiff's brake lights come on, but he did not have time to react fast enough to avoid hitting plaintiff when she stopped. Plaintiff testified that she stopped her car about a car length behind the car in front of her. After coming to a stop, plaintiff felt an impact behind her. Initially, plaintiff did not realize that defendant's truck had collided with her car because the impact left her "kind of dazed."

Plaintiff testified that, upon impact, her knees slid up and hit the dashboard on either side of the steering column. At the moment of impact, plaintiff was holding on to the steering wheel. Her wrists caved in and her shoulders came forward and hit the steering wheel and her head snapped back.

After the collision, plaintiff sat in her car a few minutes to reorient herself. Plaintiff got out of her car and walked to the back of it to survey the damage. Defendant got out of his truck and joined plaintiff. Plaintiff's car sustained very minimal damage. The bumper on defendant's truck was slightly pushed into the grill. Plaintiff and defendant exchanged information, and defendant offered to call an ambulance for plaintiff. Plaintiff declined the offer. She felt that she would be okay and that any physical discomfort would eventually pass. The police were not called to the scene of the collision.

Plaintiff returned home and told her husband about the accident. About 1$^1$/$_2$ hours later, plaintiff went to the police department to report the accident. Plaintiff obtained a report to fill out and was told to mail it in. She mailed in the report a few days later.

Shortly after the accident, on November 7, 1988, plaintiff saw Dr. Thomas Fox, an orthopedic surgeon, complaining of left-knee pain. Plaintiff told Dr. Fox that she had been involved in a car accident on October 13, 1988, in which she hit her left shin on the dashboard upon impact. Dr. Fox opined that plaintiff might have sprained her knee and possibly had some irritation along one of the tendons and the hamstring on the inner side of the knee.

On November 17, 1988, plaintiff saw Dr. Fox again regarding back pain she had been experiencing after having done some housecleaning on the previous afternoon. Dr. Fox believed that plaintiff probably strained her back and that it was possibly related to the preexisting degeneration between the level L5-S1.

Plaintiff next saw Dr. George Schoedinger, an orthopedic surgeon on December 16, 1988. Plaintiff complained of low-back pain, which she attributed to her abnormal gait that developed as a result of the knee pain she was experiencing. Plaintiff also reported stiffness about the shoulder and neck area. Dr. Schoedinger recommended an exercise regime for plaintiff. By February 1990, plaintiff's back pain worsened, and an MRI was performed. The MRI revealed disk rupture at two levels in plaintiff's low back. A subsequent myelogram confirmed the MRI findings of abnormalities of the lowest two disk spaces between 4 and 5 and 5 and 1. There were also changes in plaintiff's neck at multiple levels, as well as primarily in C4 and C5. On September 14, 1992, plaintiff was hospitalized for a lumbar diskectomy performed by Dr. Schoedinger. Dr. Schoedinger removed the disk between C4 and C5. Because plaintiff continued to experience neck pain, an anterior cervical diskectomy was performed on May 11, 1993. Dr. Schoedinger last saw plaintiff on January 17, 1994. During that visit, plaintiff related that she continued to have pain in the back of her neck, between her shoulders, and in her back. A battery of tests was performed, which indicated no abnormalities in plaintiff's neck, and there was no evidence of disk rupture anyplace. Dr. Schoedinger informed plaintiff that further medical or surgical treatment would be of no benefit to her, and he recommended that she maintain a high level of activity.

Plaintiff also saw Dr. Forbes McMullin, an orthopedic surgeon specializing in knee and hip problems. Dr. McMullin treated plaintiff's knee. In his evidence deposition, Dr. McMullin testified that he first saw plaintiff on December 16, 1988. Plaintiff's chief complaints were that she had difficulty bending her left knee and was unable to carry out her normal activities, because of the pain. Dr. McMullin diagnosed plaintiff as having mild narrowing of the medial compartment disease on both knees and probable posttrau-

matic chondromalacia patella to both knees, since plaintiff experienced some pain on her knee cap, or patella. Plaintiff was placed on an exercise program. At her September 20, 1989, visit to Dr. McMullin's office, plaintiff stated that her knee pain had worsened. On November 6, 1989, Dr. McMullin performed an arthroscopy on plaintiff's knee, removing torn tissue involving the mid- and posterior horn of the medial meniscus and debriding the undersurface of the patella. Plaintiff's postoperative treatment consisted of a specialized exercise regime to strengthen the quadriceps muscle. On January 21, 1991, Dr. McMullin saw plaintiff again concerning increased pain in her left knee. Dr. McMullin opined that plaintiff's discomfort was related to her earlier meniscal cartilage tear and some resultant increased degenerative arthritis. Dr. McMullin elected to inject plaintiff's knee with a cortisone-type, anti-inflammatory drug, Aristospan. Dr. McMullin testified that he believed that the meniscal tear which plaintiff sustained was either caused or aggravated by the car accident on October 13, 1988.

At the request of defendant's attorney, Dr. Herbert Rosenbaum, a neurologist, examined plaintiff on April 17, 1990, and on December 14, 1993. Concerning his examinations of plaintiff, Dr. Rosenbaum testified that he did not believe that the automobile accident of October 13, 1988, caused the herniated disks in plaintiff's cervical or lumbar spine. Regarding the aggravation of plaintiff's preexisting degenerative back condition, Dr. Rosenbaum opined that he would have expected plaintiff to exhibit symptoms almost immediately following the incident. Plaintiff's symptoms arose later. Furthermore, Dr. Rosenbaum opined that because surgery did not seemingly change plaintiff's symptomatology, he believes that plaintiff's medical problems are not related to the October 13, 1988, automobile collision.

During the jury-instruction conference, plaintiff tendered plaintiff's instruction No. 28, a slightly modified Illinois Pattern Jury Instructions, Civil, No. 30.21 (3d ed. 1989) (hereinafter IPI Civil 3d), relating to damages for the aggravation of a preexisting condition. Plaintiff's modified IPI Civil 3d No. 30.21 states:

"If you decide for the plaintiff on the question of liability, you may not deny or limit the plaintiff's right to damages resulting from this occurrence because any injury resulted from an aggravation of a pre-existing condition or a pre-existing condition which rendered the plaintiff more susceptible to injury."

Defendant tendered an additional non-IPI instruction on compensation for the aggravation of a preexisting condition, which defendant contends more accurately indicates that the plaintiff is not

to be compensated for the preexisting condition itself but rather is to be compensated for the aggravation of that condition. Defendants' non-IPI instruction No. 3 reads as follows:

"A person who has a condition or disability at the time of an accident is not entitled to recover damages for the preexisting condition itself. However, he is entitled to recover damages for any aggravation of the preexisting condition resulting from the injury. But where a preexisting condition or disability is aggravated in such a manner, the damages recoverable by the plaintiff are limited to the additional injury caused by the accident and the plaintiff cannot recover for any worsening of his condition not caused by the accident."

Over plaintiff's objection, the trial court gave to the jury both plaintiff's instruction No. 28 and defendant's non-IPI instruction No. 3. The jury returned a verdict in favor of defendant and against plaintiff. Plaintiff's post-trial motion for a new trial was denied. Plaintiff filed the instant appeal.

## II

Plaintiff contends that the trial court erred in giving the jury defendant's instruction No. 3 concerning the aggravation of a preexisting condition, because such instruction is not an IPI instruction and it served only to unduly emphasize the issue of plaintiff's alleged preexisting conditions. We agree.

■ Embodied in Supreme Court Rule 239 is a presumption in favor of the use of IPI instructions. Rule 239 instructs a trial court to use IPI instructions when applicable:

"Rule 239. Instructions

(a) Use of IPI Instructions; Requirements of Other Instructions. Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law." 134 Ill. 2d R. 239.

Thus, where IPI instructions correctly and adequately charge the jury, Rule 239 mandates that the IPI instruction be used. *Worthy v. Norfolk & Western Ry. Co.*, 249 Ill. App. 3d 1096, 1101, 619 N.E.2d 1371, 1375 (1993). A non-IPI instruction may be used when the court determines that the IPI instruction does not accurately state the law. *Worthy*, 249 Ill. App. 3d at 1101, 619 N.E.2d at 1374.

■ A tortfeasor is liable for injuries he causes, including the aggravation of a preexisting ailment or condition. *Balestri v. Terminal Freight Cooperative Ass'n*, 76 Ill. 2d 451, 394 N.E.2d 391 (1979). When

IPI Civil 3d No. 30.03 is given, regarding compensation for the aggravation of any preexisting ailment or condition, the accompanying Notes on Use for IPI Civil 3d No. 30.03 direct that IPI Civil 3d No. 30.21 also be given. IPI Civil 3d No. 30.03, Notes on Use, at 136. IPI Civil 3d No. 30.21 provides as follows:

> "30.21 Measure of Damages—Personal Injury—Aggravation of Pre-Existing Condition—No Limitations
>
> If you decide for the plaintiff on the question of liability, you may not deny or limit the plaintiff's right to damages resulting from this occurrence because any injury resulted from [an aggravation of a pre-existing condition] [or] [a pre-existing condition which rendered the plaintiff more susceptible to injury]."

The combination of IPI Civil 3d No. 30.03 and IPI Civil 3d No. 30.21 correctly sets forth the law that a tortfeasor is liable for injuries he causes, including the aggravation of a preexisting condition, and adequately instructs "the jury that the damages assessed should not be reduced because the disability was due in part to a preexisting condition or for the reason that plaintiff, because of a preexisting condition, was more susceptible to injury than an individual would have been without the preexisting condition." *Balestri*, 76 Ill. 2d at 456, 394 N.E.2d at 393; *Ficken v. Alton & Southern Ry. Co.*, 255 Ill. App. 3d 1047, 1056, 625 N.E.2d 1172, 1178 (1993). Where the IPI instructions correctly and adequately charge the jury, the use of non-IPI instructions in conjunction with IPI instructions is improper. *Rios v. Navistar International Transportation Corp.*, 200 Ill. App. 3d 526, 535, 558 N.E.2d 252, 259 (1990).

■ In the instant case, Dr. Fox gave testimony indicating that plaintiff initially consulted him in May 1987, complaining of pain in her right thigh and buttock. At the time of the May 1987 visit, plaintiff presented to Dr. Fox X rays of her back, which were taken in January 1987. According to Dr. Fox, the X rays indicated that plaintiff appeared to have some mild narrowing or degeneration between the fifth lumbar and the first sacral vertebrae (L5-S1). Dr. Fox, however, did not associate the thigh discomfort plaintiff complained of with the abnormalities found in the X rays, because the distribution of plaintiff's pain was not consistent with that region of degeneration. Prior to the collision, plaintiff had not experienced symptoms specifically related to the disk degeneration present in the 1987 X rays. However, subsequent to the October 13, 1988, collision, plaintiff began to experience low-back pain related to the disk degeneration, ultimately necessitating a lumbar diskectomy. Further, at trial, Dr. Schoedinger, the orthopedic surgeon who treated plaintiff after the collision and performed the diskectomy, testified

that the accident had aggravated the preexisting degenerative changes in plaintiff's back and neck. In light of these facts, the combination of IPI Civil 3d No. 30.03 and IPI Civil 3d No. 30.21 fairly and fully advises the jury as to the issue of the aggravation of a preexisting ailment and adequately informs the jury that it should not award damages for preexisting conditions not aggravated by defendants' negligent conduct. Because IPI Civil 3d No. 30.03 and IPI Civil 3d No. 30.21 correctly stated the law regarding a tortfeasor's liability for the aggravation of a preexisting condition, no supplemental non-IPI instructions were required to fully advise the jury as to this issue.

Defendant contends that its instruction No. 3 was merely supplemental and amplified the IPI instructions on the aggravation of a preexisting condition. We are unpersuaded by this contention. Given that the IPI instructions on the aggravation of a preexisting condition adequately instruct the jury under the facts of the instant case, it was improper to supplement or amplify the IPI instructions. *Lay v. Knapp*, 93 Ill. App. 3d 855, 857-58, 417 N.E. 2d 1099, 1101 (1981) (stating that the amplification or clarification of IPI instructions may be permitted in limited circumstances where the IPI instruction is inadequate and an additional instruction is appropriate). Further, "[j]ury instructions should not unduly emphasize any particular matter" or be repetitious. *Montefusco v. Cecon Construction Co.*, 74 Ill. App. 3d 319, 325, 392 N.E.2d 1103, 1107 (1979). When taken as a whole, the inclusion of defendant's instruction No. 3 renders the instructions repetitious and confusing and gives undue emphasis to plaintiff's preexisting condition. Accordingly, we find that the trial court erred in giving defendant's non-IPI instruction No. 3 on the aggravation of a preexisting condition.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

HOPKINS, P.J., and MAAG, J., concur.