**Ronald Dean REED, Plaintiff–Appellant,**

v.

**UNION PACIFIC RAILROAD COMPANY, Defendant–Appellee.**

No. 98–3345.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1999.

Decided July 15, 1999.

Jerome J. Schlichter, Swansea, IL, Nannette A. Baker (argued), Schlichter, Bogard & Denton, St. Louis, MO, for plaintiff-appellant.

Thomas E. Jones (argued), Walker & Williams, Belleville, IL, for defendant-appellee.

Before BAUER, FLAUM, and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

Ronald Reed won monetary damages against Union Pacific Railroad Company in a personal injury suit that arose out of an accident that occurred when Reed's truck hit an exposed replacement rail as he crossed over train tracks. Reed now requests a new trial on the issue of damages on the grounds that the district court improperly refused to instruct the jury about certain elements of damages to which he claims to have been entitled, and improperly instructed the jury about comparative fault. For the reasons set forth below, we reverse and remand in part, and affirm in part.

## I. BACKGROUND

On September 1, 1994, Ronald Reed was driving his pickup truck on E.L. Harris' Ranch in Murphysboro, Illinois, where he had been working as a farmhand for approximately thirteen years. As he approached a private railroad crossing which had no crossbucks, gates, or warning lights, Reed slowly rolled up to the crossing and checked both right and left for any approaching trains. He did not, however, look directly in front of him. As Reed crossed over the train tracks, his truck hit a replacement rail that had been left uncovered by Union Pacific. The impact caused Reed to be thrown and twisted around the inside of the truck and jerked the steering wheel to the right, causing the truck to become stuck on the rail. After dislodging his truck, Reed brought his coworker, Ted Vanbuskirk, to the railroad crossing where the accident occurred. They approached the accident scene in the same truck Reed had been driving at the time of the accident. As they neared the track, Vanbuskirk testified that, although specifically looking for the replacement rail, he could not see it from the truck. Only after stepping out of the truck and walking up to the tracks was he able to see the replacement rail. Harris, Reed's employer, corroborated Reed's story by testifying that he could not see the rail from his truck, and saw it only when he walked up to the tracks to fix a gate.

Later that day, Reed began to feel pain and stiffness in his neck, arm, shoulder, and head. That evening, Reed went to the hospital where he saw Dr. Gregorio F. Macareg. Dr. Macareg prescribed moist heat and some pain killers. From September of 1994 until December of 1997, Reed sought medical treatment for various conditions related to injuries he sustained from the accident. A few weeks after the initial emergency room visit, Dr. Macareg performed a CT scan which showed that Reed had a mild degenerative disk disease between C5–C6 levels, and between C6–C7 levels. Reed saw Dr. Macareg, as well as a number of other doctors, numerous times between September of 1994 and December of 1997 for pain in his neck and right arm. Dr. Macareg opined that the accident on September 1, 1994 aggravated Reed's preexisting degenerative disk condition. Dr. Macareg was unsure whether Reed would be able to perform heavy labor in the future as back and neck ailments heal with differing results.

In January of 1997, Reed visited Dr. David S. Raskas. Based on his examination of Reed, Dr. Raskas testified that Reed had objective, physical symptoms of pain that corroborated his subjective complaints. After several visits, Dr. Raskas was able to conclude that any asymptomatic degenerative disk problems Reed may have had before the accident became symptomatic as a result of the accident. On December 9, 1997, Dr. Raskas performed a surgery known as a C5–C6 anterior cervical diskectomy, which is the removal of a disk along with fusion and bone grafting and plating. Dr. Raskas opined that the surgery was necessary because of the injury and pain that arose as a result of Reed's accident on September 1, 1994. He further opined that Reed's condition is permanent and that it will affect his em-

ployment abilities because Reed should avoid performing heavy labor.

Reed also saw Dr. Sherwyn Wayne in June of 1998 at the request of Union Pacific. During his visit with Dr. Wayne, Reed told him that a week after his surgery with Dr. Raskas, he was back on the job working as a farmhand. He also told Dr. Wayne that his pain was better than it was prior to his surgery and that he was not taking any pain medication or undergoing any physical therapy. Dr. Wayne also testified that Reed had a degenerative disk condition that existed before the accident of September 1, 1994. Furthermore, Dr. Wayne believed that the accident caused an aggravation of his pre-existing condition, but that Reed should be able to perform his regular work duties, limiting any activities requiring heavy physical demand, whether those activities are work related or recreational.

At the trial, Reed testified that, prior to the accident, he worked around twelve to thirteen hours a day, six days a week as a farmhand on Harris' ranch. Obviously, no job for a slacker. He said that he never had any problems with his neck or arm before the accident. Reed further testified that he is still working as a farmhand and tries to do all he can, but that he cannot do nearly as much as he used to, nor can he work as long as he could before the accident. Before the accident occurred, Reed said he had plans to change his occupation from farmhand to farm machinery repairman. However, he is now unsure how successfully he will be able to make that change because of his injuries.

The jury returned a verdict in favor of Reed and determined that he suffered damages totaling $83,022.90. This amount was composed of $41,511.45 for pain and suffering and $41,511.45 for medical expenses. But the jury also found that Reed's own negligence contributed 50% to his injuries, so the total compensation was $41,511.45.

## II. ANALYSIS

Although the jury returned a verdict for Reed, he now seeks a new trial on the issue of damages claiming that the trial court failed to give the proper jury instructions. We review a district court's choice of jury instructions for an abuse of discretion. *Spiller v. Brady*, 169 F.3d 1064, 1066 (7th Cir.1999). When determining whether a new trial is warranted because of improper jury instructions we ask "whether the instructions, when considered in their entirety and not in isolation, were sufficient to inform the jury of the applicable law." *Id.* (citations omitted). Reed raises three distinct issues regarding the district court's choice of jury instructions. First, he argues that the jury should have been instructed that, under Illinois law, the aggravation of a pre-existing condition is a separate element of damages. Second, he claims that the jury should have been instructed that Reed may have been entitled to damages for the loss of future earnings. Third, he argues that there was not enough evidence to warrant an instruction about comparative fault. We will examine each of these issues separately.

### A. Aggravation of a Pre–Existing Condition

During the course of the trial, testimony was elicited from both Reed's and Union Pacific's medical experts that Reed had a degenerative disk disease that existed prior to the accident of September 1, 1994. Because of this fact, Reed tendered Illinois Pattern Jury Instruction ("IPI") 30.03 which states:

If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant, taking into consideration the nature, extent and duration of the injury.

The aggravation of any pre-existing ailment or condition.

Whether any of these elements of damages has been proved by the evidence is for you to determine.

IPI 30.01, 30.03. In addition, Reed tendered IPI 30.21 which states:

If you decide for the plaintiff on the question of liability, you may not deny or limit the plaintiff's right to damages resulting from this occurrence because any injury resulted from an aggravation of a pre-existing condition.

IPI. 30.21. The district court refused to give these instructions. The court determined that, as a matter of law, the aggravation of a pre-existing condition is a separate element of damages, but the evidence in this case did not warrant the instruction. The court did not think that the law was meant to encompass the aggravation of unknown conditions. The court also concluded that everyone over the age of thirty has some sort of pre-existing condition, and that an MRI would find something wrong with almost everyone. Therefore, the court chose a verdict form that listed only the following as elements of damages to which Reed was entitled if the jury found Union Pacific to be negligent: (1) disability, (2) disfigurement, (3) pain and suffering, (4) medical expenses, and (5) lost earnings. The court ruled that it would not give the instructions for the aggravation of a pre-existing condition as a separate element, and he challenged the parties to "go down a quarter of a mile, turn right and drive for about six hours and let those people up there tell me I'm wrong."

The district court's suggestion was well taken, for we find that the district court was wrong. The case law in Illinois overwhelmingly supports Reed's position that IPI 30.03 and 30.21 should have been given to the jury. *See, e.g., Kravcik v. Golub & Co., Inc.*, 286 Ill.App.3d 406, 221 Ill.Dec. 865, 676 N.E.2d 668 (1997) (aggravation of pre-existing condition is a separate element of damages); *Podoba v. Pyramid*

*Elec., Inc.*, 281 Ill.App.3d 545, 217 Ill.Dec. 374, 667 N.E.2d 167 (1996) (combination of IPI 30.03 and 30.21 is the present state of the law in Illinois); *Ficken v. Alton & S. Ry. Co.*, 255 Ill.App.3d 1047, 193 Ill.Dec. 51, 625 N.E.2d 1172 (1993) (same).

One Illinois appellate court has found differently. In *Smith v. City of Evanston*, 260 Ill.App.3d 925, 197 Ill.Dec. 810, 631 N.E.2d 1269 (1994), the appellate court determined that the aggravation of a pre-existing condition did not constitute a separate element of damages. *Id.* at 1277. In its reasoning, the Illinois appellate court stated that the IPI were drafted before the advent of itemized verdict sheets and many of the items on the jury sheets are duplicative. *Id.* at 1276. Thus, it ruled that an award for the aggravation of a pre-existing condition would over-compensate the plaintiff because aggravation of a pre-existing injury overlaps with awards for other elements of damages. *Id.* at 1277. This ruling has been referred to as "an aberration of the existing Illinois authority." *Kravcik*, 221 Ill.Dec. 865, 676 N.E.2d at 673.

In direct conflict with *Smith*, however, numerous Illinois appellate courts have held that itemized jury sheets do not create duplicative awards, and a jury can determine whether a plaintiff suffered damages from the aggravation of a pre-existing condition, as well as make an independent determination whether the plaintiff suffered additional damages for increased pain and suffering from the aggravation of that condition. *See, e.g., Tedeschi v. Burlington Northern R. Co.*, 282 Ill.App.3d 445, 217 Ill.Dec. 953, 668 N.E.2d 138 (Ill.App.1996); *Knight v. Lord*, 271 Ill.App.3d 581, 207 Ill.Dec. 917, 648 N.E.2d 617 (Ill.App.1995). Given the case law in Illinois, we hold that IPI 30.03 and 30.21 correctly state the law in Illinois.

Having decided this, we must now determine whether the evidence in this case warranted the instructions. The district court refused the instruction based on its

notion that, even though the undisputed testimony showed that Reed had a pre-existing degenerative disk condition, everyone over the age of thirty has some sort of pre-existing medical condition and Reed did not manifest any symptoms of his condition. Whether or not this is true, it misses the point. Every doctor who testified agreed that Reed had a pre-existing degenerative disk disease and that the accident aggravated *that condition*. This is not a case of a pre-existing condition that was unrelated to the injury caused by the defendant's negligence. Nor is this a case where the aggravation of a pre-existing condition was not proximately caused by the defendant's negligence. In *Gruidl v. Schell*, 166 Ill.App.3d 276, 116 Ill.Dec. 748, 519 N.E.2d 963 (Ill.App.1988), the Illinois appellate court ruled that the trial court correctly refused to give the instruction providing for aggravation of a pre-existing condition as a separate element of damages. *Id.* at 967. In that case, the plaintiff was suffering from cancer. *Id.* The court ruled that, because of the unfortunate fact that cancer is an ever-spreading disease, neither a prompt diagnosis nor any action by the defendants would have prevented the spreading of the disease. *Id.* at 968. The court noted that while a tortfeasor must take his plaintiff as he finds him, he cannot be held liable for the aggravation of a pre-existing condition that is not proximately caused by his negligence. *Id.* at 967–68.

▪ Here, the evidence is undisputed that the accident on September 1, 1994 aggravated Reed's otherwise asymptomatic degenerative disk disease. The fact that his condition had previously been asymptomatic is of no consequence. Under the district court's ruling, anyone with a latent pre-existing condition would be barred from recovering for another's negligence that aggravated that condition. Such a rule makes little sense and goes against the well-settled notion that a defendant must take his plaintiff as he finds him. *See Balestri v. Terminal Freight Co-op.*

*Ass'n*, 76 Ill.2d 451, 31 Ill.Dec. 189, 394 N.E.2d 391 (1979). The IPI make no requirement for the plaintiff to either have known about the pre-existing condition or to have shown symptoms of the pre-existing condition in order to be entitled to the instruction for the aggravation of that condition. The question of damages in a personal injury case is "peculiarly one for the trier of fact." *Kirk v. Walter E. Deuchler Associates, Inc.*, 79 Ill.App.3d 416, 34 Ill. Dec. 780, 398 N.E.2d 603, 610 (Ill.App. 1979).

This appears to be a case where both sides agreed that Reed suffered from a pre-existing condition, but each side submitted this evidence for different reasons. Presumably, Reed offered it to increase his damages award under the theory that a defendant must take his plaintiff as he finds him, and Union Pacific is therefore liable for any aggravation of his pre-existing condition. On the other hand, Union Pacific seems to have submitted the same evidence to rebut the argument that its negligence was the proximate cause of Reed's injuries and to argue that his injuries are the result of something else, namely the pre-existing condition. However, since the jury determined that Union Pacific was liable for Reed's injuries, and the evidence adduced at trial showed that the accident aggravated Reed's pre-existing condition, it is apparent that the district court should have tendered IPI 30.03 and 30.21. The aggravation of a pre-existing condition should have been listed as a separate item on the verdict form, and the issue should have been left to the jury to decide whether Reed was entitled to compensation for it. The trial judge impermissibly took this duty away from the jury and supplanted his own opinion on the issue, thereby abusing his discretion in refusing to give IPI 30.03 and 30.21.

**B. Loss of Future Earnings**

▪ Reed also tendered IPI 30.07, which instructs the jury that a plaintiff may be entitled to earnings reasonably

certain to be lost in the future as a result of the defendant's negligence as a separate element of damages. The district court also refused to give this instruction. The loss of future earnings as a separate element of damages compensates a plaintiff for the impairment of his future earning capacity. *LaFever v. Kemlite Co. a Div. of Dyrotech Industries, Inc.*, 185 Ill.2d 380, 235 Ill.Dec. 886, 706 N.E.2d 441, 455 (Ill. App.1998). It is calculated by deducting what the plaintiff is capable of earning after his injury from the amount he would have been capable of earning but for his injury. *Id.* To be entitled to an instruction for the loss of future earnings, there must be reasonably certain proof that such a loss will occur. *Brown v. Chicago and North Western Transp. Co.*, 162 Ill.App.3d 926, 114 Ill.Dec. 165, 516 N.E.2d 320, 327–28 (Ill.App.1987). All that is needed is some evidence in the record to justify the theory of the instruction. The mere fact that a plaintiff is earning the same amount, or even more, after the injury is not an adequate indication of earning power. Such information may be a factor, however, in helping the jury make its determination of the impairment of the plaintiff's ability to earn. *Id.* Illinois courts have held that "the appearance of the plaintiff on the witness stand, his testimony as to the nature of his injuries and their duration is sufficient to take the question of impaired earning capacity to the jury." *Antol v. Chavez–Pereda*, 284 Ill.App.3d 561, 219 Ill.Dec. 812, 672 N.E.2d 320, 329 (1996) (quoting *Patel v. Brown Mach. Co.*, 264 Ill.App.3d 1039, 201 Ill.Dec. 902, 637 N.E.2d 491, 505 (Ill.App.1994)).

At trial, Reed testified that, at the end of 1996, his salary increased to $5.00 an hour (minimum wage at the time). He also testified that it has not gone down, but it has gone up each year, presumably in accordance with the minimum wage increases. In addition to his wage, he received overtime pay when warranted. He also testified that he planned to work at his current position until his boss passed away or no longer needed him. He said that, before the accident, he had plans to become a mechanic fixing farm machinery when no longer needed at Harris' ranch. According to Reed, he had done this type of work in the past, and earned the equivalent of $25.00 an hour for his work.[1] Because of his injuries, Reed does not think he will be able to fix farm machinery by himself, but he now thinks he will need a helper.

In addition to Reed's own testimony about his ability to work, all of the doctors testified that Reed would be able to work in some capacity, but disagreed about the extent of his abilities to perform physically. Dr. Raskas testified that Reed's injuries were permanent, and that his injuries would affect his employment because he would be precluded from performing heavy labor. Dr. Wayne testified that Reed would be able to return to his normal work duties, but that he would be limited in his ability to perform heavy labor. In addition to Reed's and the doctors' testimony, Vanbuskirk also testified about Reed's working abilities since the accident. Vanbuskirk, during cross examination, testified that Reed's duties and responsibilities have not changed significantly since the accident. However, Vanbuskirk did testify that there are certain jobs that Reed used to perform by himself which now require assistance.

In support of the district court's ruling not to instruct the jury about the loss of future earnings as a separate element of damages, Union Pacific relies heavily on *Christou v. Arlington Park–Washington Park Race Tracks Corp.*, 104 Ill.App.3d 257, 60 Ill.Dec. 21, 432 N.E.2d 920 (Ill.App. 1982) and *Wolkenhauer v. Smith*, 822 F.2d 711 (7th Cir.1987). In *Christou*, the plaintiff had been a bus-boy, but was unemployed at the time of his injury. *Christou*, 60 Ill.Dec. 21, 432 N.E.2d at 923. At trial,

---

1. Reed said that when he did this type of work, it was usually done on a barter-type of system so he could build a reputation in the community for his work.

the plaintiff testified that he was training for a job as a bartender at the time he was injured, but, due to his injuries, he would be unable to perform that job. *Id.* He also said that his salary as a bartender would have been $200 to $250 dollars per week, but according to conversations he had had with other bartenders, he would have been making up to $450 per week by the time of the trial. *Id.* Furthermore, he testified that he had an ambition to own a restaurant one day. *Id.* At the trial, the court allowed testimonial evidence that the profitability of the average restaurant was $500 to $700 per week. *Id.* The appellate court, however, found that this evidence about the profitability of a restaurant was prejudicial to the defendant and should not have been admitted because it was too remote and speculative. *Id.* The appellate court reasoned that the plaintiff's desire to own a restaurant was merely an ambition which had never materialized and the jury should not have been permitted to consider such income as an item of decreased earning capacity. *Id.* The appellate court allowed the evidence that the plaintiff could have made up to $250 a week as a bartender, but his testimony that he could have made up to $450 a week as a bartender at the time of the trial was inadmissible speculation. *Id.* In light of the errors at trial, the appellate court ruled that a new trial on all of the issues was warranted. *Id.*

In *Wolkenhauer*, the district court ruled that any loss of future earnings was too speculative to be compensable. *Wolkenhauer*, 822 F.2d at 717. Although the plaintiff in that case was injured because of the negligence of the defendant, the court thought that there were too many other factors contributing to the plaintiff's decreased earning capacity aside from his injury, namely the bankruptcy of the trucking company for which he originally worked. *Id.* That case was a bench trial, and the issue of damages was left solely to the judge.

While merely speculative, remote, or uncertain evidence of loss of fu-ture earnings is not admissible, *Christou*, 60 Ill.Dec. 21, 432 N.E.2d at 923, evidence about what an injured plaintiff would have pursued but for his injuries is admissible so long as it is supported by competent evidence. *See Exchange Nat. Bank of Chicago v. Air Illinois, Inc.*, 167 Ill.App.3d 1081, 118 Ill.Dec. 691, 522 N.E.2d 146, 149 (Ill.App.1988). In this case, Reed testified that he planned to repair farm machinery when he was no longer needed by his current employer, and that repairing farm machinery would earn him significantly more money than he earns now. He claimed that he earned the equivalent of $25 an hour when he did this type of work, but it was possible to earn up to $35 an hour. Additionally, he said that he would now need a helper, whereas, before the accident, he had planned to pursue this occupation alone. There is medical testimony supporting the allegations that Reed's ability to perform heavy labor is now diminished because of his injuries. Arguably, this could affect his ability to fix farm machinery. Given that the district court allowed the evidence at trial as to what Reed had planned to do and the permanency of his injuries, it improperly took the decision away from the jury as to whether or not Reed was entitled to damages for the loss of future earnings. The evidence of decreased earning capacity may not be overwhelming, but "[t]he quantum of proof necessary to prevail on a claim is different ... from the measure of evidence needed to send an issue to the jury." *LaFever*, 235 Ill.Dec. 886, 706 N.E.2d at 455. Reed only needs to furnish "some evidence" to earn a jury instruction on the claim. *Id.*

This case is different from *Christou* in that Reed had repaired farm machinery in the past while the plaintiff in *Christou* was a bus-boy training to be a bartender and had absolutely no training in running a restaurant and had never tried opening one. There is a difference between a plaintiff's mere ambition to attain a goal and his ability to attain it. It would not

have been irrational for the jury to conclude that Reed could have gone on to an occupation of repairing farm equipment but that his ability is now hampered by his injuries. We are not ruling on whether Reed is actually entitled to damages for loss of future earnings, and, indeed, it is a close call. However, the issue should have been left for the jury to decide. *See Bernesak v. Catholic Bishop of Chicago*, 87 Ill.App.3d 681, 42 Ill.Dec. 672, 409 N.E.2d 287, 294–95 (Ill.App.1980) (issue of lost earnings should have been decided by the jury and instruction on such should have been given). Reed did provide some evidence of the permanency of his injuries and that his future earning capacity could be diminished due to the injuries he sustained from the negligence of Union Pacific. The district court abused its discretion by not giving IPI 30.07.

### C. Comparative Negligence

 Lastly, Reed argues that the jury should not have been instructed on the issue of comparative negligence because Union Pacific introduced no affirmative evidence showing that Reed failed to exercise the proper degree of care when driving his truck across the train tracks. Union Pacific has the burden of proving that Reed failed to adhere to the proper standard of care, i.e. that Reed, through his own negligence, contributed to his injuries. *Patel*, 201 Ill.Dec. 902, 637 N.E.2d at 500. In order to prevail on this issue, Union Pacific must show by a preponderance of the evidence that Reed was negligent and his negligence was a proximate cause of his injuries. *Id.*

Reed relies on *Buczyna v. Cuomo & Son Cartage Co.*, 146 Ill.App.3d 404, 100 Ill.Dec. 51, 496 N.E.2d 1116 (Ill.App.1986) as authority that, without supporting evidence, a defendant is not entitled to an instruction on comparative negligence. That case involved a head-on collision. The defendants argued that there was evidence of the decedent's contributory negligence, but the court refused to instruct the

jury on such. *Id.* at 1123. The defendants argued that the evidence showed that the decedent's car had crossed over the center line, thus proximately causing the accident. *Id.* at 1124. In support of this contention, the defendants pointed to the close proximity of the front of the decedent's vehicle to the center line, the front wheels slightly turned to the left, and oil from the decedent's car on the center line. *Id.* The court ruled that this evidence of the decedent's negligence was speculative at best and provided no reasonable basis from which a jury could find that the decedent was negligent. *Id.*

Union Pacific elicited testimony from Reed that, although he did look to both sides when crossing the railroad tracks, he did not look straight in front of him, where the replacement rail was situated. Reed also said there was nothing either outside or on the inside of his truck that obstructed his view of the tracks. He further testified that he did not stop prior to crossing over the tracks. Illinois courts have held that it is negligent for an individual to fail to keep a proper lookout while driving because a driver should reasonably anticipate danger at all times. *Chaplin v. Geiser*, 79 Ill.App.3d 435, 34 Ill.Dec. 805, 398 N.E.2d 628, 632 (Ill.App.1979). Vanbuskirk also provided testimony that he comes to a complete stop when he arrives at that railroad crossing. In addition, the jury saw numerous photographs of the accident scene, and it could determine whether Reed should have been able to see the replacement rail if exercising the proper duty of care.

We reiterate that it is within the province of the jury to determine damages in a personal injury case. Union Pacific responded in its answer that Reed's injuries were proximately caused by his own negligence and it introduced sufficient evidence to allow the jury to determine if that was true. Given the testimony and visual evidence presented to the jury, there was sufficient evidence to get the question of comparative negligence to the jury. In-

deed, the jury found that Reed was 50% negligent. The district court did not abuse its discretion by instructing the jury about comparative fault.

## CONCLUSION

We REVERSE and REMAND the case for a new trial on the issue of damages because the district judge impermissibly refused to instruct the jury on the issues of aggravation of a pre-existing condition and the loss of future earnings as separate elements of damages. We AFFIRM the district court's decision to instruct the jury on the issue of comparative fault.